[No. 17176–3–I.   Division One.   May 28, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL
HENRY PETERS, *Appellant*.

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Dean Lum, Deputy,* for respondent.

SCHOLFIELD, C.J.—Michael H. Peters appeals his conviction for second degree burglary, arguing the court erred by (1) failing to instruct the jury that the State had the burden of disproving duress, (2) failing to instruct the jury that first degree criminal trespass was a lesser included offense of second degree burglary, and (3) by denying him a continuance in order to obtain the presence of a material witness. We affirm.

## FACTS

On March 20, 1985, at approximately 1:45 p.m., Seattle police responded to a burglar alarm at the home of Thomas Ryder and arrested 18–year–old Michael Peters, whom they found hiding in the attic. After he was advised of his rights, Peters admitted to police he had burglarized the house, but only because a man named Jack Morris had threatened to kill him if he did not do so. Peters was charged with second degree burglary. The juvenile court declined jurisdiction, and the case was tried before a jury.

Prior to the presentation of the defense, a material witness warrant was issued for defense witness Richard Lovejoy, who had failed to appear pursuant to a subpoena. The court reconvened 2 days later, but the police had been unable to find Lovejoy in the meantime. The court granted a continuance until the afternoon session, by which time Lovejoy had telephoned the court and indicated he was deliberately evading the police, had no intention of appearing to testify, and said he did not even know the defendant. The court denied Peters' motion for a further continuance. The court also denied Peters' motion for a mistrial, and the case proceeded.

Peters testified that, around 5 a.m. on the morning of the burglary, he was walking with Richard Lovejoy to a friend's house. Peters told the court that Jack Morris pulled up in his automobile and ordered Peters inside at gunpoint. Peters said that Morris told him to break into Ryder's house and steal some things for him or Morris would kill him. Peters said he considered not following Morris's order

to commit the burglary, but was afraid Morris would make good on his threat.

Daniel Norby testified for the defense. Norby and Peters both told the court that Jack Morris was big, well over 6 feet tall and had a violent reputation. Norby and Peters said that Morris had once kidnapped them, locked them in his basement, threatened them at gunpoint, and shot at them. Peters testified he was frightened of Morris and complained to the police, who apparently talked to Morris but did nothing else.

The court instructed the jury on the defense of duress, but refused to give Peters' "to convict" instruction, which provided that the State had to disprove duress beyond a reasonable doubt. The court also refused to instruct the jury that criminal trespass was a lesser included offense of second degree burglary, reasoning that, given Peters' defense of duress, the jury should either convict him of burglary or find him not guilty.

Peters was convicted as charged, and this appeal timely followed.

## DURESS—BURDEN OF PROOF

Peters contends that the trial court erred by not instructing the jury that the State had the burden of disproving duress beyond a reasonable doubt. We find no error in the court's refusal to give Peters' proposed instruction since the absence of duress was not an ingredient of the offense charged.

The State bears the burden of proving the absence of a defense beyond a reasonable doubt "if the absence of such defense is an ingredient of the offense and there is some evidence of the defense." *State v. McCullum,* 98 Wn.2d 484, 490, 656 P.2d 1064 (1983). Whether the absence of a defense is an ingredient of the offense charged is determined in one of two ways: (1) the statute may reflect a legislative intent to allocate the burden of proof to the State or (2) one or more elements of the defense may "negate" one or more elements of the offense which the prosecution

must prove beyond a reasonable doubt. *State v. McCullum, supra.*

## Statutory Allocation

The issue in *McCullum* was whether the State had to disprove self–defense once the issue was raised in a prosecution for first degree murder. The court noted its previous interpretations of the old criminal code, which required that the State prove beyond a reasonable doubt the absence of self–defense. The court also noted that the Legislature had clearly set forth in the new statutory scheme the requirement that a defendant bear the burden of proving certain other defenses "*by a preponderance of the evidence*", indicating that the Legislature was well aware of the question of burdens of proof. The court concluded that, in the absence of an indication from the Legislature that it intended to overrule the common law, the new legislation would be presumed to follow the common law's allocation of the burden of proof to the State once the issue of self–defense is properly raised. *McCullum,* at 492–93.

At issue in the case at bar is RCW 9A.16.060, which provides in pertinent part that:

(1) In any prosecution for a crime, it is a defense that:
(a) The actor participated in the crime under compulsion by another who by threat or use of force created an apprehension in the mind of the actor that in case of refusal he or another would be liable to immediate death or immediate grievous bodily injury; and
(b) That such apprehension was reasonable upon the part of the actor; and
(c) That the actor would not have participated in the crime except for the duress involved.
(2) The defense of duress is not available if the crime charged is murder or manslaughter.

Peters argues that, in the absence of a clear legislative intent in this statute to place the burden of proof on the defendant, the obligation to disprove duress must be on the prosecution.

■ Our research reveals no Washington decision speaking directly to this issue. However, it was implicit in the

court's discussion in *State v. Bromley,* 72 Wn.2d 150, 154–55, 432 P.2d 568 (1967) that the burden of proving duress was on the defendant in that case. Holding it was error to instruct the jury that a defendant must prove coercion or duress by the greater weight of the evidence, the *Bromley* court quoted an earlier decision as follows:

> As to all such affirmative defenses we have always held that *the burden is upon the accused* to support his defense to the extent of establishing a reasonable doubt in the minds of the jurors . . .

(Italics ours.) *State v. Rosi,* 120 Wash. 514, 518, 208 P. 15 (1922) (defense of alibi).

The courts in many other jurisdictions have held that duress is an affirmative defense and the burden of proof lies with the defendant: *See, e.g., People v. Calvano,* 30 N.Y.2d 199, 282 N.E.2d 322, 331 N.Y.S.2d 430 (1972); *Roy v. Commonwealth,* 500 S.W.2d 921 (Ky. 1973); *State v. Toscano,* 74 N.J. 421, 378 A.2d 755 (1977); *Commonwealth v. Robinson,* 382 Mass. 189, 415 N.E.2d 805 (1981); *People v. O'Neill,* 79 A.D.2d 429, 437 N.Y.S.2d 202 (1981); *State v. Wilkerson,* 616 S.W.2d 829 (Mo. 1981); *State v. Strickland,* 307 N.C. 274, 298 S.E.2d 645 (1983); *Thornburg v. State,* 699 S.W.2d 918 (Tex. Ct. App. 1985).

Therefore, from the statute's silence as to the allocation of the burden of proof regarding duress, we draw the opposite conclusion from that urged on us by Peters, *i.e.,* the Legislature did not intend to overrule the common law's allocation of that burden to the defendant. *State v. McCullum, supra* at 492–93.

### Negation of an Element or Elements of the Crime Charged

Due process requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *In re Winship,* 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). Thus, where a defense has been raised which negates an element of the crime charged, the absence of that defense becomes an element of the

prosecution's burden of proof. *State v. McCullum, supra.*

In *McCullum,* the court held that self–defense negated the intent element of first degree homicide. The court reasoned that, since there can be no intent within the meaning of the murder statute unless the defendant kills "unlawfully" and since self–defense is explicitly made lawful, once self–defense has been raised by the defendant the burden shifts to the prosecution to prove the absence of self–defense beyond a reasonable doubt. *McCullum,* at 494–96.

With regard to the charge in the case sub judice, a person is guilty of second degree burglary if, "with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle." RCW 9A.52.030(1). A person has "intent" when he "acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a). Relying on *McCullum,* Peters argues that duress "negates" both the unlawful entry and the intent elements of burglary; thus, the jury should have been instructed that the State bore the burden of disproving duress beyond a reasonable doubt.

However, self–defense and the defense of duress are distinguishable from one another. Since self–defense is a lawful act, one who kills in self–defense does not have the objective or purpose "to accomplish a result which constitutes a crime." Hence, one who kills in self–defense does not act with the requisite intent to constitute homicide. *State v. McCullum, supra.*

On the other hand, the rationale of the duress defense is not that the defendant lacked the requisite intent for the crime charged; "[r]ather it is that, even though he has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is justified . . ." W. LaFave & A. Scott, *Criminal Law* § 49, at 374 (1972). Therefore, duress does not negate criminal intent. It excuses one whose actions violate the literal language of the criminal law from the legal consequences of those actions. Thus, unlike self–defense, duress is not a defense to murder or manslaughter because, at that point, the Legislature has

drawn the line as to what conduct is justified by a person acting under threat or compulsion. RCW 9A.16.060(2).

In short, Peters, by his own admission, unlawfully entered the Ryder home with the intent to commit a crime therein. If the jury had been convinced that he acted under duress, he would have been excused from the legal consequences of his actions. Absence of duress was not, however, an element of the crime charged. Therefore, the burden was not on the State to prove the absence of duress beyond a reasonable doubt, and the court did not err by refusing Peters' proposed "to convict" instruction.[1]

### LESSER INCLUDED OFFENSE INSTRUCTION

Peters contends that he had an absolute right to a lesser included instruction on criminal trespass even though that was inconsistent with his defense theory. We hold, however, that the evidence did not support the giving of such an instruction.

In *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978), the court devised a 2–prong test for determining whether an instruction on a lesser included offense must be given:

> First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed.

(Citations omitted.) *Workman,* at 447–48. In the instant case, the State concedes that the first prong of the *Workman* test was satisfied, but maintains the second prong was not. We agree.

▮▮▮ The second or factual prong of the *Workman* test requires that "the evidence supports an inference that *only* the 'lesser' offense was committed." (Italics ours.) *State v. Putnam,* 31 Wn. App. 156, 163, 639 P.2d 858, *review denied,* 97 Wn.2d 1018 (1982). For example, in *State v. Cozza,* 19 Wn. App. 623, 576 P.2d 1336 (1978), a defendant

---

[1]*Accord, State v. Russell,* 47 Wn. App. 848, 737 P.2d 698 (1987), filed simultaneously with this opinion.

convicted of attempted second degree burglary assigned error to the court's refusal to give an instruction on the lesser included offense of attempted second degree criminal trespass. The court held, however, that, since the State's theory of prosecution was the defendant's complicity in the offense and the defense theory was nonparticipation, there was no evidentiary basis upon which to ground the lesser included offense; the defendant was either guilty of the crime charged or not guilty at all. *Cozza,* at 626; *see also State v. Snider,* 70 Wn.2d 326, 327, 422 P.2d 816 (1967).

We find that Peters' own admissions at trial precluded the jury from finding that he had only committed criminal trespass. Peters testified he went to the Ryder home, broke a window, entered, and located a cutlery set and some change that he intended to steal. Given these facts, if the jury disbelieved Peters' defense of duress, the only rational result was to find him guilty of second degree burglary.

Peters cites *State v. Wilson,* 41 Wn. App. 397, 399, 704 P.2d 1217, *review denied,* 105 Wn.2d 1003 (1985) as controlling. In *Wilson,* the defendant was charged with the delivery of a controlled substance, marijuana. At trial, the defendant denied even having the marijuana, but nevertheless asked that the court instruct the jury on the lesser included offense of possession.

On appeal, the court held that the refusal to give the instruction was error because, even though the defendant denied having the marijuana, the State's evidence would support an inference that possession had in fact occurred, and therefore, there was evidence to support the lesser included instruction. *State v. Wilson, supra* at 399–400.

*Wilson* is distinguishable from the case at bar. Here, all the evidence, including Peters' own testimony, was that he committed the crime charged. Whereas, the jury in *Wilson* could have rationally found, based on the evidence, that the defendant, although he had possessed marijuana, had not delivered it, here there was no evidence from which the jury could have found that, although Peters unlawfully entered the Ryder home, he did so for some purpose other than to

steal property. Peters testified that he intended to burglarize the house, arguing only that he acted under duress, which we have already established could not negate his intent to steal.

In conclusion, the trial court did not err by refusing to instruct the jury on the lesser included offense of criminal trespass since the evidence would not support the inference that only the lesser crime had been committed.

## DENIAL OF THE CONTINUANCE

Finally, Peters contends the denial of the continuance to locate Richard Lovejoy constituted a denial of his right to compulsory process and due process of law. We find that the trial court did not abuse its discretion by denying the continuance.

A motion for a continuance is addressed to the sound discretion of the trial court, whose decision will only be reversed for abuse of discretion, that is, only "if no reasonable person would have taken the view adopted by the trial court." *State v. Henderson*, 26 Wn. App. 187, 190, 611 P.2d 1365 (1980); *State v. Barker*, 35 Wn. App. 388, 397, 667 P.2d 108 (1983). Moreover, the decision to deny a continuance will be disturbed only if the defendant shows he was prejudiced or that the result of the trial would likely have been different had the motion for a continuance been granted. *State v. Eller*, 84 Wn.2d 90, 95, 524 P.2d 242 (1974); *State v. Kelly*, 32 Wn. App. 112, 114, 645 P.2d 1146 (1982).

When ruling on Peters' motion for a continuance, the trial judge indicated that she had been in contact with Lovejoy, who was aware of the subpoena, but was intentionally evading the police trying to serve the material witness warrant. There was no reason to believe the police would find Lovejoy anytime soon, and the court concluded from Lovejoy's comments that his testimony would not likely be helpful to the defense. In fact, Lovejoy even denied knowing Peters, and there was no written statement of his proposed testimony. Thus, other than the defend-

ant's own testimony, there is no evidence that Lovejoy could or would corroborate Peters' claim of duress.

Under these circumstances, it cannot be said that no reasonable person would have taken the view adopted by the trial court. Peters, moreover, has failed to show he was prejudiced by the court's denial of the continuance since we can only speculate whether Lovejoy's testimony would have been helpful or would have changed the outcome of the case.

Accordingly, the judgment of the trial court is affirmed.

COLEMAN and PEKELIS, JJ., concur.

Review denied by Supreme Court September 1, 1987.