[No. 14348-8-II.   Division Two.   July 19, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM C. ROGERS, *Appellant.*

---

*John A. Hayes,* for appellant.

*C.C. Bridgewater, Prosecuting Attorney,* and *Douglas S. Boole, Deputy,* for respondent.

ALEXANDER, C.J. — William C. Rogers appeals his conviction on a charge of vehicular homicide. Rogers assigns error to the trial court's admission into evidence of: (1) testimony regarding his invocation of his right to remain silent; (2) statements he made to a deputy sheriff after his arrest; (3) tests of his blood; and (4) a videotape showing a driver's view, at various speeds, of the road where the accident occurred. Rogers also asserts that the trial court erred in refusing to instruct the jury that reckless driving and negligent driving were lesser included offenses of vehicular homicide, as charged. We affirm.

William C. Rogers was charged in Cowlitz County Superior Court with vehicular homicide and vehicular assault. The charges arose out of an accident that occurred in Longview at approximately 6:25 p.m. on November 14, 1989, when Rogers's truck smashed into a smaller truck driven by Michelle Slatum. Slatum died minutes after the crash. Slatum's passenger sustained only minor injuries.[1]

Cowlitz County Deputy Sheriff Charles Rosenzweig arrived at the scene of the accident shortly after it occurred and found two men holding Rogers by the wrists in an apparent effort to prevent him from departing from the scene. As Rosenzweig took hold of Rogers's wrist, he smelled alcohol on Rogers's breath. Rosenzweig asked Rogers for his name; whether he owned the larger truck; if he had been driving it; if he was hurt; and if he had been drinking. Rogers gave Rosenzweig his name and stated that he was not injured. He also told the deputy that he was the driver and the owner of the larger truck, and that he had been drinking. When Rogers was asked whether he had attempted to leave the scene, he stated, "I got to go get my wife, I have got to go call my wife." Rosenzweig arrested Rogers and placed him in handcuffs. Paramedics

---

[1] The vehicular assault charge was based on the injury to the passenger. That charge was dismissed before trial.

then arrived and transported Rogers to the emergency room of a Longview hospital.

Rosenzweig proceeded to the hospital where he advised Rogers of his constitutional rights. He then questioned Rogers. Rogers answered all of Rosenzweig's questions, until Rosenzweig asked him how much he had had to drink that evening. To that question Rogers replied, "I would just as soon leave that."

Before trial Rogers moved, pursuant to CrR 3.5, to suppress the statements he made to Rosenzweig at the scene of the accident and at the hospital. The hearing judge ruled that all of the statements Rogers made to Rosenzweig were admissible.

At trial, the State called Deputy Rosenzweig and Officer Michael Giles of the Washington State Patrol. Giles, who was trained in accident investigation, testified that he took measurements at the scene. He said, also, that he participated in filming a videotape from inside a patrol vehicle which was driven at speeds of 30, 40 and 50 miles per hour, over the path that Rogers's truck had traveled before the accident. In each "run", the driver of the patrol car applied the brakes as soon as he saw a patrol car that was parked in the approximate position Slatum's truck had occupied before Slatum pulled it out onto the roadway and was struck. The videotaping was done during daylight hours and in good weather. Rogers objected to the admission of the videotape. The trial court admitted it, but gave the jury a limiting instruction relating to this evidence.[2] It allowed Giles to narrate to the jury what the videotape purported to show.

Rogers's counsel took exception to the trial court's failure to give his proposed instructions on the lesser included offenses of reckless driving and negligent driving. The jury found Rogers guilty of vehicular homicide. Following sentencing he appealed.

---

[2] The instruction was as follows: "[T]his videotape is what we call demonstrative evidence only. It does not purport to be a recreation of the circumstances or conditions that existed at the time of the event here involved."

## MENTION OF INVOCATION OF RIGHT
## TO REMAIN SILENT

Rogers argues, for the first time on appeal, that his motion to suppress should have been granted to the extent of precluding Rosenzweig from testifying about Rogers's refusal to disclose how much he had had to drink before the crash. He asserts that the testimony drew inappropriate attention to Rogers's invocation of his right to remain silent.

The State contends that Rogers cannot raise this issue on appeal because it was not raised below. Although Rogers concedes that he failed to raise this issue or make mention of his right to remain silent at the CrR 3.5 hearing or at trial, he avers that the issue is, nonetheless, reviewable. Rogers correctly observes that a party may raise for the first time in an appellate court a manifest error affecting a constitutional right. RAP 2.5(a)(3). Rogers, citing *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), suggests that Rosenzweig's testimony violated his due process rights. In *Doyle*, the United States Supreme Court stated:

> Silence in the wake of [*Miranda*] warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

(Footnotes and citations omitted.) 426 U.S. at 617-18; *see also State v. Belgarde*, 110 Wn.2d 504, 511-12, 755 P.2d 174 (1988); *State v. Fricks*, 91 Wn.2d 391, 395, 588 P.2d 1328 (1979).

█ Even assuming that Rogers is correct in his contention that the admission of Rosenzweig's testimony was error, we do not believe that it occurred in such a manner as to rise to con-

stitutional proportion.[3] In *State v. Johnson*, 42 Wn. App. 425, 712 P.2d 301 (1985), *review denied*, 105 Wn.2d 1016 (1986), we held that it is only when the prosecutor unfairly uses evidence of postarrest silence against a defendant that there is a due process violation. We said that in making a determination as to whether the evidence is prejudicial, courts should examine the context in which the evidence is revealed to determine:

> the extent to which it was called to the jury's attention, and the possibility that from that evidence the jury may have drawn an inference unfavorable to the defendant.

*Johnson*, 42 Wn. App. at 431. Here, there was no real prejudice to Rogers. The record shows that Rosenzweig's testimony regarding Rogers's refusal to say how much he had had to drink was not highlighted. Indeed, it was quickly elicited and then passed over. Furthermore, the answer that Rogers gave, "I would just as soon leave that", did not reflect unfavorably on Rogers. The fact that defense counsel did not object to the question posed to Rosenzweig or ask for a curative instruction suggests that it was of little moment in the trial. Because Rosenzweig's testimony was not unfairly used against Rogers so as to deprive him of his due process right to a fair trial, the error in admitting the evidence was harmless and does not require reversal. We are satisfied, as we must be, that the outcome of the trial would not have been different if the alleged error had not occurred. *State v. Jackson*, 102 Wn.2d 689, 689 P.2d 76 (1984).

## ADMISSION OF STATEMENTS AND BLOOD TEST

Rogers argues that Deputy Rosenzweig lacked probable cause to arrest him at the scene, and that that illegal arrest tainted the blood alcohol test and interrogation which occurred at the hospital. Probable cause for a warrantless arrest

---

[3]Arguably, Rogers did not invoke his right to remain silent. The record shows that he answered all of the questions Rosenzweig asked, with the exception of how much he had to drink. This could be viewed as a selective answering of questions rather than an invocation of the right to remain silent.

exists when facts and circumstances within the arresting officer's knowledge are sufficient to cause a person of reasonable caution to believe that a crime has been committed. *State v. Fricks*, 91 Wn.2d 391, 588 P.2d 1328 (1979) (citing *State v. Gluck*, 83 Wn.2d 424, 426-27, 518 P.2d 703 (1974)). The officer need not have evidence sufficient to prove every element of the crime beyond a reasonable doubt. *State v. Knighten*, 109 Wn.2d 896, 903, 748 P.2d 1118 (1988).

Here, Deputy Rosenzweig had probable cause to arrest Rogers at the scene. The extent of the injuries to Slatum's passenger and the damage to the two trucks evidenced a high-speed collision. Furthermore, Rogers told Rosenzweig that he was the owner and driver of the larger truck and he admitted, at the scene, that he had been drinking alcohol prior to the accident. In addition, Rosenzweig noticed a strong, "obvious" smell of alcohol on Rogers's breath and observed that Rogers was being restrained at the scene by two persons, who told Rosenzweig that Rogers had attempted to flee. When questioned about his alleged attempt to leave the scene, Rogers told Rosenzweig that he needed to leave in order to call his wife. Finally, when Rosenzweig took hold of Rogers's wrist to prevent him from fleeing, Rogers resisted the officer's grip.

We conclude from these facts that, at the very least, Rosenzweig had sufficient cause to believe that Rogers had committed the offenses of driving while under the influence of alcohol and vehicular assault. Because Rosenzweig had probable cause to arrest Rogers, the arrest was not illegal. Accordingly, the trial court did not err in admitting the results of the blood alcohol test and the testimony regarding the interrogation which took place after the arrest.

### VIDEOTAPE

Rogers argues that the trial court erred in admitting the videotape made by Trooper Giles. The videotape was in the nature of demonstrative evidence. In *Kramer v. J.I. Case Mfg. Co.*, 62 Wn. App. 544, 815 P.2d 798 (1991), Division One held:

> Demonstrative evidence is admissible if the experiment was conducted under conditions reasonably similar to the condi-

tions existing at the time of the event at issue. 5 K. Tegland, Wash. Prac., *Evidence* § 93, at 294 (3d ed. 1989). Whether the similarity is sufficient is a matter for the trial court's discretion. If the similarity is sufficient to justify admissibility, any lack of similarity goes to the weight of the evidence. *Jenkins v. Snohomish Cy. PUD 1*, 105 Wn.2d 99, 107, 713 P.2d 79 (1986).

*Kramer*, 62 Wn. App. at 555; *see also Jones v. Halvorson-Berg*, 69 Wn. App. 117, 847 P.2d 945 (1993). Furthermore, in *State v. Strandy*, 49 Wn. App. 537, 745 P.2d 43 (1987), *review denied*, 109 Wn.2d 1027 (1988), we said:

In determining whether photographs should be admitted, the trial court must determine whether the probative value of the evidence outweighs its prejudicial effect. *State v. Crenshaw*, 98 Wn.2d 789, 806, 659 P.2d 488 (1983). The test is identical for videotapes. *State v. Brooks*, 30 Wn. App. 280, [286,] 633 P.2d 1345, *review denied*, 96 Wn.2d 1021 (1981).

*Strandy*, 49 Wn. App. at 541.

Rogers objected to the admission of the videotape, contending there were substantial differences between conditions shown on the videotape and the conditions existing at the time of the accident, to wit: (1) the braking of the patrol car started after the point on the road where Rogers's skid marks began; (2) the camera's narrow range of vision increased the viewer's perception of speed; (3) the patrol cars used for the videotaping were not of the same height, size, and color as Rogers's and Slatum's vehicles; (4) the stationary patrol car was parked by the side of the road rather than in the middle of the road where Slatum's car had been located at the time of the accident; and (5) the videotape was taken early on a clear day, whereas the accident occurred on a misty day in November at approximately 6:25 p.m.

The trial court admitted the videotape, concluding that the differing conditions were not significant because the videotape was not admitted for the purpose of showing what Rogers actually observed on the day of the incident, but rather to demonstrate what one would see at various speeds while driving the route that Rogers's truck drove prior to the accident. Furthermore, in admitting the videotape, the trial court instructed the jury to disregard any differing condi-

tions and to consider the evidence for demonstrative purposes only. It also excised the less probative sections and cut out the somewhat distracting audio portion. These efforts by the trial court mitigated any unfair prejudice that might have flowed to Rogers. In our judgment, the jury was fully capable of determining what weight to accord this evidence. The trial court did not abuse its discretion in admitting the videotape.

### Lesser Included Offense Instructions

Finally, Rogers argues that the trial court erred in failing to give his two proposed jury instructions on what he contends were the lesser included offenses of reckless driving and negligent driving. A defendant is entitled to an instruction on a lesser included offense if: (1) each of the elements of the lesser offense is a necessary element of the crime charged, and (2) the evidence supports an inference that the lesser crime was committed. *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978). We need not address the first, "legal" prong of *Workman* because it is clear that the "factual" prong is not met.

■ With regard to the "factual" prong of the *Workman* test, our Supreme Court has held:

> It is not enough that the jury might simply disbelieve the State's evidence. Instead, some evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense before an instruction will be given.

*State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990), *disapproved on other grounds in State v. Blair*, 117 Wn.2d 479, 487, 816 P.2d 718 (1991). The test is, thus:

> whether there is evidence supporting an inference that the defendant is guilty of the lesser offense *instead of* the greater one.

*State v. Bergeson*, 64 Wn. App. 366, 369, 824 P.2d 515 (1992); *see also State v. Peters*, 47 Wn. App. 854, 860, 737 P.2d 693, *review denied*, 108 Wn.2d 1032 (1987).

■ Here, there was no evidence that Rogers committed reckless driving or negligent driving, instead of vehicular

homicide.[4] Rogers does not point to any evidence that suggests that Slatum died from any cause other than Rogers's negligent or reckless driving. Indeed, all of the evidence pointed to the fact that Slatum's death came about as a result of Rogers's reckless or negligent driving. That being the case, Rogers could not have committed reckless or negligent driving instead of vehicular homicide. The trial court did not commit error in instructing the jury.

Affirm.

MORGAN, J., and PETRICH, J. Pro Tem., concur.

Review denied at 123 Wn.2d 1004 (1994).

---

[4]Vehicular homicide is defined in RCW 46.61.520(1) as follows:

"When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:

"(a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or

"(b) In a reckless manner; or

"(c) With disregard for the safety of others."