IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34031-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSHUA W. BRINK, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Joshua Brink appeals his conviction for second degree assault of a child. We affirm Mr. Brink's conviction but remand for resentencing.

## FACTS

In 2012, Mr. Brink lived with his then girlfriend, Ashley Brown, and her two-year-old son, K.S.D. One afternoon in late November, Mr. Brink was at home with K.S.D. when he called Ms. Brown and reported K.S.D. had been burned. Ms. Brown arrived home and saw K.S.D.'s buttocks were red.

Mr. Brink's explanation of the incident is as follows: Mr. Brink had brought K.S.D. home from work, and the two were preparing to take a shower. Mr. Brink removed K.S.D.'s clothes and placed him on the toilet.[1] Mr. Brink then heard a truck

---

[1] According to Ms. Brown, Mr. Brink was "very adamant" K.S.D. be toilet trained. 1 Verbatim Report of Proceedings (Dec. 2, 2015) at 147.

coming up the driveway. When K.S.D. finished using the toilet, Mr. Brink set K.S.D. in the empty bathtub. Mr. Brink went to answer the front door and engaged in a conversation with the visitor, a friend from work. While talking, Mr. Brink heard K.S.D. scream. Mr. Brink ran to the bathroom and noticed steam coming from the bathtub. Mr. Brink observed K.S.D. sitting in the bathtub, crying, with his knees bent and feet against the front of the bathtub while his hands were braced against the walls of the bathtub. The hot water handle was turned on, and hot water was running between his legs. Mr. Brink immediately grabbed K.S.D. out of the bathtub and turned off the water. He then placed K.S.D. in cool water and cared for K.S.D.'s burns before calling Ms. Brown.

Ms. Brown and Mr. Brink initially cared for K.S.D.'s burns at home. But after several days Ms. Brown took K.S.D. to the hospital because the burns appeared to be getting worse.

At the hospital, K.S.D. was treated by Dr. Michelle Messer, a board certified pediatrician with expertise in child abuse and neglect. Dr. Messer noted K.S.D. had sustained serious burns to his buttocks and the underside of his penis. As there were no other injuries on K.S.D.'s body, Dr. Messer did not think the burn pattern was consistent with an accidentally inflicted burn in the manner described by Mr. Brink. With an immersion burn, Dr. Messer expected to see sparing in the buttocks and genital region, or

2

a lack of burns that occurs when areas of skin are insulated from the scalding water either by contact with the cooler bathtub surface or by contact with another area of the body. She also expected to see splash marks of burns. Based on the incongruity between Dr. Messer's observations and Mr. Brink's explanation, Dr. Messer concluded the burns were caused by abusive contact.

The State charged Mr. Brink with second degree child assault with aggravating circumstances. Following a trial where witnesses testified consistent with the above-stated facts, the jury found Mr. Brink guilty as charged. At sentencing, the trial court imposed 120 months of confinement and 18 months of community custody. The trial court stated any good time credited to Mr. Brink during confinement would be converted to community custody so as not to exceed the statutory maximum of 120 months. Accordingly, the community custody provisions of the judgment and sentence include the following notation: "[C]ombined term of confinement and community custody for any particular offense cannot exceed the statutory maximum. RCW 9.94A.701." Clerk's Papers (CP) at 180. Mr. Brink appeals.

## ANALYSIS

*Allegations of prosecutorial misconduct*

During closing argument the prosecutor stated: "The physical evidence, the

3

observed evidence is of abusive injury. *The doctor told you beyond a reasonable doubt—without hesitation, without hesitation at all that this was not nonaccidental.* She gave a thorough and good consideration. *So if it didn't happen that way, which way did it happen?"* 2 Verbatim Report of Proceedings (VRP) (Dec. 2, 2015) at 259 (emphasis added). Mr. Brink claims these comments were improper because they (1) vouched for Dr. Messer's credibility, (2) misstated and impermissibly shifted the burden of proof, and (3) introduced facts not in evidence.

To establish prosecutorial misconduct, a defendant must prove the prosecutor's conduct was improper and prejudiced his right to a fair trial. *State v. Jackson*, 150 Wn. App. 877, 882, 209 P.3d 553 (2009). Prejudice is established only if there is a substantial likelihood the misconduct affected the jury's verdict. *Id.* at 883. This court reviews a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *Id.* If defense counsel fails to object to the prosecutor's statements, as was the case here, then reversal is required only if the misconduct was so flagrant and ill intentioned that no instruction could have cured the resulting prejudice. *Id.* The fact that defense counsel did not object to a prosecutor's statements "suggests that it was of little moment in the trial." *State v. Rogers*, 70 Wn. App. 626, 631, 855 P.2d 294 (1993).

4

The majority of Mr. Brink's misconduct claims fail because they are based on a mischaracterization of the record. The prosecutor clearly misspoke when he stated "[t]he doctor told you beyond a reasonable doubt." 2 VRP (Dec. 2, 2015) at 259. Recognizing this error, the prosecutor immediately corrected himself and explained the doctor's testimony was "without hesitation." *Id.* The context of the prosecutor's comments, coupled by the lack of objection from the defense, supports our understanding that the prosecutor simply made a misstatement that was immediately corrected, as opposed to an intentional misrepresentation. As a consequence, no judicial intervention or correction was necessary.

Apart from seizing on the prosecutor's corrected misstatement, Mr. Brink argues the prosecutor improperly shifted the burden of proof by asking, "if it didn't happen that way, which way did it happen?" *Id.* We disagree with this assessment. It is true a prosecutor must not suggest the defense has a duty to present evidence. However, "a prosecutor is entitled to point out the improbability or lack of evidentiary support for the defense theory of the case." *State v. Osman*, 192 Wn. App. 355, 366-67, 366 P.3d 956 (2016). That is what happened here. The prosecutor's rhetorical question simply pointed out that the evidence did not support any reasonable inference other than guilt. This was an appropriate line of argument. *Id.* (Prosecutor permissibly asked, "If a struggle or

5

some type of confrontation didn't occur in the car how did that earring come out of her ear and get left on the floor and how did she break those fingernails if an encounter did not, and a struggle, did not occur?").[2]

*Ineffective assistance of counsel*

Mr. Brink claims he received ineffective assistance of counsel when defense counsel failed to object to (1) Dr. Messer's speculative and irrelevant testimony and (2) Ms. Brown's testimony expressing an opinion on his guilt.[3]

This court reviews claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on such a claim, a defendant must show (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Deficient performance is that which falls below an objective standard of reasonableness. *Id.* at 33. This court presumes counsel's performance was

---

[2] Mr. Brink also compares the prosecutor's argument to an impermissible "fill-in-the-blank" argument. *See State v. Venegas*, 155 Wn. App. 507, 523-25, 228 P.3d 813 (2010) (such an argument is improper because it erodes the presumption of innocence and implies a defendant is responsible for supplying a reason not to convict). But reading the prosecutor's closing argument as a whole, it is evident the prosecutor did not argue the jury had to come up with a reason to acquit Mr. Brink.

[3] Mr. Brink also argues it was ineffective for defense counsel to fail to object to the aforementioned aspects of the prosecutor's closing argument. Because the prosecutor's argument was not improper, counsel was not ineffective for failing to object.

not deficient. *Id.* A defendant may rebut this presumption by showing the performance was not a matter of legitimate strategy or tactics. *Id.* To demonstrate prejudice, a defendant must show his trial counsel's performance was so inadequate that there is a reasonable probability the result at trial would have been different. *State v. Kolesnik*, 146 Wn. App. 790, 800, 192 P.3d 937 (2008). A failure to prove either element defeats a claim of ineffective assistance. *Id.*

### *Speculative and irrelevant expert testimony*

Mr. Brink first argues defense counsel was ineffective for failing to object to the following portion of Dr. Messer's testimony:

> One of the things I thought about is sometimes it's difficult taking care of a two year old. I've had a few of those in my life, and they can be a challenge. You know, sometimes they poop at inappropriate moments or they get their hands in the diaper, and it goes everywhere, and you have to clean that up, and people get mad.
> I could see where somebody could be so mad they would take the kid and use scalding hot water to clean him up. That would produce this. That's one way.
> Do I know for sure what happened to do that? No, I don't. I wasn't there, but that would be one way to cause this kind of burn.

1 VRP (Dec. 1, 2015) at 77.

Mr. Brink's criticisms fail to fully account for Dr. Messer's testimony. During questioning by the State, Dr. Messer engaged in a lengthy narrative about the various scenarios that could have lead up to K.S.D.'s injuries. She started with theories that could

7

have resulted in K.S.D. accidentally injuring himself. But none of those matched the physical evidence. She then described the above-quoted scenario as a possible explanation for how the injuries could have occurred. Unlike the innocent explanations, this explanation was consistent with the physical evidence. Viewed in context, Dr. Messer's testimony came across as an explanation of her deductive reasoning process. It was not presented as a theory of Mr. Brink's actual mind-set or motivation. The prosecutor did not rely on Dr. Messer's theory of motivation in arguing its case to the jury. Reversal in such circumstances is generally unwarranted. *See State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989) (only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal).

Even if Dr. Messer's testimony had played a greater role in the case, reversal would be unwarranted as defense counsel's failure to object was reasonably strategic. There was no testimony indicating Mr. Brink found it difficult to take care of a two-year old or that K.S.D. ever had a problem soiling himself. The only potentially related testimony came from Ms. Brown, who stated Mr. Brink was adamant K.S.D. be toilet trained. The feelings attributed to Mr. Brink by Ms. Brown were hardly unusual. Many parents of two-year-olds emphasize toilet training. But that does not mean they are prone

to abuse. The lack of evidence supporting Dr. Messer's theory of motivation had the potential to undercut her credibility and emphasize the speculative nature of her testimony.

*Improper opinion testimony*

Mr. Brink next argues defense counsel was ineffective for failing to object to improper opinion testimony. On recross-examination, the following exchange occurred between Ms. Brown and defense counsel:

> Q Prior to this incident happening, when you and [K.S.D.] and Mr. Brink were all living together, how did the relationship seem between your son, [K.S.D.], and Mr. Brink?
>
> A Great, and that's why it was very hard for me to understand the situation or to assume that the incident was on purpose or not because, you know, I would think that if a child was getting abused by somebody, that child would not want to be around that person, but at the same time, he was still wanting to be around Josh, you know. He would want to go outside and play with Josh.
>
> Q So what you're saying, if I understand correctly, just to sort of condense it is until this incident, it seemed everything was okay. There was no reason to suspect otherwise?
>
> A For the most part, yes.

1 VRP (Dec. 2, 2015) at 167. On redirect, the prosecutor asked the following:

> Q Ms. Brown, has your understanding changed?
>
> A Yes.

9

Q  Can you explain that?

A  I believe now after listening to the experts and seeing, you know, the reports and everything that it was done on purpose.

*Id.* at 168.

The State claims the defense opened the door to Ms. Brown's testimony.  We disagree.  The defense asked Ms. Brown about the relationship between K.S.D. and Mr. Brink "prior" to the burning incident.  *Id.* at 167.  This did not open the door to the prosecution introducing testimony about what Ms. Brown's impressions were regarding the incident or what she learned afterwards.  *See State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

Although the prosecutor's question improperly elicited Ms. Brown's opinion about the testimony of other witnesses, defense counsel's failure to object was reasonably strategic.  Ms. Brown's testimony made clear that the only basis she had for doubting Mr. Brink's innocence was the testimony of the experts.  Her independent experience was to the contrary.  This testimony provided Mr. Brink an additional reason for why the jury should disbelieve the expert testimony as speculation and find Mr. Brink not guilty.

No. 34031-7-III
*State v. Brink*

*Evidentiary error*

Mr. Brink contends the trial court abused its discretion by admitting multiple photographs of K.S.D.'s injuries. We disagree. Although the photographs were somewhat cumulative, they were not excessive. Only three separate photographs were shown to the jury. All accurately depicted K.S.D.'s injuries. And all were probative, as they supported Dr. Messer's theory of causation. While the subject matter of the photographs was unpleasant, there is no indication the State used the photographs to inflame the jury. Given these circumstances, the trial court acted within its discretion in admitting the photographs. *State v. Whitaker*, 133 Wn. App. 199, 227-29, 135 P.3d 923 (2006).

*Sentencing error*

Mr. Brink contends, and the State agrees, that the trial court erred in imposing a total term of confinement and community custody that exceeds the statutory maximum. Mr. Brink was convicted of second degree assault of a child. That crime carries a statutory maximum term of incarceration of 120 months. RCW 9A.36.130(2); 9A.20.021(1)(b). In addition, a community custody term of 18 months is authorized. RCW 9.94A.701(2); RCW 9.94A.030(55)(ix).

11

Here, the trial court sentenced Mr. Brink to 120 months of confinement and 18 months of community custody. This exceeds the statutory maximum. The court included a notation on the judgment and sentence indicating the total term of confinement and community custody actually served could not exceed the statutory maximum. Such a notation was sufficient under *In re Personal Restraint of Brooks*, 166 Wn.2d 664, 211 P.3d 1023 (2009).[4] *State v. Boyd*, 174 Wn.2d 470, 472, 275 P.3d 321 (2012). However, that changed after the passage of RCW 9.94A.701(9) in 2009. *Id.* Following enactment of this statute, the *Brooks* notation procedure no longer complied with statutory requirements. *Id.* Because Mr. Brink was sentenced after RCW 9.94A.701(9) became effective, the trial court was required to reduce his term of community custody to avoid a sentence in excess of the statutory maximum. The court erred in not doing so. Remand to the trial court is required to either amend the community custody term or resentence Mr. Brink consistent with RCW 9.94A.701(9). *Id.* at 473.[5]

---

[4] *Brooks* held when the trial court imposes an aggregate term of confinement and community custody that potentially exceeds the statutory maximum, it must include a notation clarifying that the total term of confinement and community custody actually served may not exceed the statutory maximum. 166 Wn.2d at 674-75.

[5] Should the trial court opt to strike the term of community custody, Mr. Brink's presence will not be required at the hearing.

12

No. 34031-7-III
*State v. Brink*

CONCLUSION

Mr. Brink's conviction is affirmed. This matter is remanded to the trial court for either amendment of the community custody term or resentencing. Mr. Brink's request to deny appellate costs is granted.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, A.C.J.                 Siddoway, J.

13