[No. 15263-7-I. Division One. February 18, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. CLARK ELMO ROSS, *Appellant.*

*Browne, Ressler & Foster* and *John Henry Browne,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Greg R. Hubbard, Deputy,* for respondent.

RINGOLD, A.C.J.—After a jury trial Clark Elmo Ross was found guilty on two counts of assault with a deadly weapon. Ross appeals, arguing that the trial court erred by admitting a 911 tape into evidence and then allowing it to be used during jury deliberations. We hold that Ross's constitutional right to confront witnesses was denied; therefore, we reverse.

On July 5, 1979, shortly after 5 a.m., a shooting occurred at the home of Tony Thomas and Patricia Ellis in Seattle. Ross was arrested for the crime 4½ years later. Trial took place on April 30 and May 1, 1984.

At trial, Thomas testified that Ross came to the house on the morning of July 5 to look for Ross's girl friend, Ellis's sister. According to Thomas, Ellis told Ross that she didn't know the whereabouts of her sister. Thomas testified that Ross then went back to his car, pulled out a gun, and fired three shots at Thomas and Ellis standing in the doorway of the house.

Though she had been subpoenaed, Ellis did not testify. Instead, a tape recording of the call she made to the police emergency operator was admitted into evidence. On the 911 tape she identifies Ross as the man who fired three shots at the house.

When the State first attempted to admit the 911 tape, Ellis was available to testify. She had, however, expressed to the prosecutor a wish not to testify. Later in the day she left the courthouse without informing the prosecutor. At the close of the first day of trial, the trial court issued a material witness warrant. The prosecutor stated, "My inclination is to not have it served this evening but tomorrow morning so as to cause the least inconvenience possible." The next and final day of trial, Ellis was not present.

Ross testified that he was living in Las Vegas during the shooting, and was not present in Seattle on July 5, 1979. Two defense witnesses testified that they went to Thomas's house to purchase cocaine and were present when the shooting occurred. They identified someone else as the shooter, and testified they did not tell the police in 1979

because of their involvement in purchasing illicit drugs.

## ADMISSIBILITY OF 911 TAPE

Ross contends that, while the tape may be a business record, it contained hearsay, which went to the heart of an issue at trial and should not have been admitted. *See State v. White,* 72 Wn.2d 524, 530, 433 P.2d 682 (1967). Ross also argues that the hearsay statements were not admissible under ER 803(a)(2), the excited utterance exception, because Ellis had the opportunity to reflect before making the statements. Finally, Ross argues his confrontation rights[1] were violated, because there was no showing that Ellis was unavailable and her statements were unreliable.

## BUSINESS RECORD

"The ruling of a trial judge in admitting or excluding business records is to be given much weight and will not be reversed unless there has been a manifest abuse of discretion." *State v. Barringer,* 32 Wn. App. 882, 885, 650 P.2d 1129 (1982).

The State relies on *State v. Bradley,* 17 Wn. App. 916, 567 P.2d 650 (1977), *review denied,* 89 Wn.2d 1013 (1978) for the proposition that tape recordings of incoming emergency calls to the police satisfy RCW 5.45.020.[2] The facts in *Bradley* are somewhat unusual. A defense alibi witness testified that, at the same time the defendant was alleged

---

[1]U.S. Const. amend. 6 provides, in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ."

Const. art. 1, § 22 (amend. 10) provides, in part: "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face . . ."

[2]RCW 5.45.020 provides: "A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

to have robbed a jewelry store, she saw the defendant during a police investigation of a purse snatching some distance away. *Bradley,* at 917–18. On rebuttal, the State offered, as a business record, a computer printout of all phone calls for police assistance that day to demonstrate that the only police investigation for a purse snatching occurred 3 hours after the jewelry store robbery. *Bradley,* at 918. Thus, the statements of the caller were not admitted to prove the truth of the matter asserted as was done in the present case.

■ If hearsay content in a business record goes to the heart of an issue at trial so that, if believed by the jury, it could be regarded as proof of that issue, the hearsay should be rejected. *White,* at 530; *Barringer,* at 885; *accord, Brown v. Spokane Cy. Fire Protec. Dist. 1,* 100 Wn.2d 188, 195, 668 P.2d 571 (1983). In *Brown,* the court held that an audiotape was inadmissible, even though it was recorded in the regular course of business, because the hearsay statements contained in the tape did not fit under any exception to the hearsay rule. *Brown,* at 195–96. The statements by Ellis must therefore fall under some other exception to the hearsay rule for the tape recording to be admissible. *See Brown.*

### EXCITED UTTERANCE

This exception to the hearsay rule admits statements made while the declarant is under the exciting influence of an event, where the circumstances show no opportunity for deliberation or fabrication. *State v. Schimmelpfennig,* 92 Wn.2d 95, 99, 594 P.2d 442 (1979). It is apparent from listening to the tape that the statements made by Ellis fall within the rule. She is crying and agitated throughout the recorded conversation, and the phone call was made contemporaneously with the shooting or shortly thereafter.

### CONFRONTATION CLAUSE

Though Ellis's statements would be admissible in a civil case as an excited utterance, they must pass muster under the confrontation clause to be admissible in a criminal case.

*See California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970). The United States Supreme Court provided a 2–part test to determine whether a hearsay statement is admissible without violating the Sixth Amendment's confrontation clause. *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980). First, the Court requires that the State either produce the out–of–court declarant or demonstrate the declarant's unavailability. *Roberts,* at 66. Second, the statement must bear adequate indicia of reliability. *Roberts,* at 66.

Prior to *Roberts,* the Supreme Court of this state held that a properly admissible business record, if it is sufficiently reliable, does not violate the confrontation clause. *State v. Kreck,* 86 Wn.2d 112, 542 P.2d 782 (1975). Subsequent decisions by the Court of Appeals have relied on *Kreck,* holding that it is unnecessary to demonstrate the unavailability of the person who made the business record. *E.g., State v. Bradley, supra; State v. Smith,* 16 Wn. App. 425, 433, 558 P.2d 265 (1976), *review denied,* 88 Wn.2d 1011 (1977).

To require that the person who made the actual entry into a business record be either produced or shown unavailable would eliminate the business records exception in criminal trials with voluminous business records at issue. *See United States v. Keplinger,* 572 F. Supp. 1068 (N.D. Ill. 1983). Thus it is appropriate, where reliability is shown and cross examination serves little function, that business records be admissible without a showing that the person who made the record is unavailable. *Kreck.*

In the case sub judice it is not the record keeper that the defendant wishes to cross–examine. With electronically taped conversations, there is no record keeper. Instead, the defendant wishes to cross–examine a witness against him, the declarant of hearsay statements contained in the 911 tape. While it is the rule that a business record such as a laboratory report may be admissible without showing the unavailability of the person making the report, with regard to hearsay statements contained in a business record, the

unavailability of the declarant must be demonstrated. *Cf. State v. White, supra; State v. Barringer, supra.*

In *State v. Smith*, 85 Wn.2d 840, 851, 540 P.2d 424 (1975), the Supreme Court stated:

> We are cognizant that where, as here, the evidence sought to be admitted is crucial to the State's case, the right of confrontation is critical. *Dutton v. Evans*, [400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970)]. Where no confrontable witness is produced, it must be shown that production is somehow excused; if the excuse is unavailability, then the unavailability of the declarant must be certain, and the reliability of the evidence must be otherwise established.

"A witness may not be deemed unavailable unless the prosecution has made a good faith effort to obtain the witness' presence at trial. When a confrontable witness is not produced unavailability must be certain." (Citation omitted.) *State v. Ryan*, 103 Wn.2d 165, 170–71, 691 P.2d 197 (1984).

The situation here is analogous to that in *State v. Guloy*, 104 Wn.2d 412, 705 P.2d 1182 (1985). In *Guloy* the State could have had direct testimony at the time hearsay testimony was proffered by a coconspirator. *Guloy*, at 423–24. Subsequently the declarant became unavailable. *Guloy*, at 425. Though found to be harmless error, the court held that the defendants were denied their right of confrontation. *Guloy*, at 425.

The State was aware that Ellis was available but reluctant to testify. The State did not call her as a witness, but instead attempted to present her version of the events by the recorded conversation on the tape. The trial court reserved its ruling at that time and did not admit the 911 tape until the following day, when Ellis was not present to testify. The record is silent as to why Ellis did not appear on the second day of trial, or what attempts were made to locate her. With this record, this court cannot find that the State made a good faith effort to procure Ellis to testify. *See Ryan.*

## Jury Room Use of 911 Tape

Ross contends that the 911 tape recording should not have been submitted to the jury and taken to the jury room, because of the danger it would be given too much weight in the outcome of the trial. In *State v. Frazier*, 99 Wn.2d 180, 661 P.2d 126 (1983), the Supreme Court considered the admissibility of tape recorded statements as jury exhibits. The court distinguished taped confessions from other taped evidence, such as depositions or dying declarations. *Frazier*, at 189. The court reasoned the latter were susceptible of undue emphasis beyond the scope of ordinary testimony if allowed into the jury room. *Frazier*, at 189. In *Frazier*, the court held that it was permissible to allow a taped confession into the jury room. The court concluded:

> While trial court judges should continue to be aware of the potential for overemphasizing the importance of such evidence and should prevent such exhibits from going to the jury if unduly prejudicial, we think that decision is best left to the sound discretion of the trial judge. In the absence of an abuse of that discretion to the prejudice of the defendant, its exercise will not be disturbed on appeal.

*Frazier*, at 190–91.

■ Two considerations which the Supreme Court relied upon in finding no abuse of discretion in *Frazier* are not present in the case at bench. First, the case at bench is not concerned with a taped confession, but with evidence more akin to a dying declaration. Second, in *Frazier*, the trial judge did not allow the jury to have a playback machine in the jury room, thus assuring himself of control over the number of times the jury would hear the tape. *Frazier*, at 191.

Here the trial court retained no control over the number of times the jury would listen to the tape. Confronted with directly contradictory testimony, it was an abuse of discretion by the trial court to surrender control of the use of the recording to the jury. *See Frazier; State v. Smith*, 85

Wn.2d at 851.

We hold that Ross's right under the United States and State Constitutions to confront witnesses was violated.[3] Accordingly, we reverse and remand for a new trial.

SWANSON, J., and HOLMAN, J. Pro Tem., concur.

---

[3]In view of this holding, we do not address Ross's claim of prosecutorial misconduct.