[No. 9225-5-II.   Division Two.   August 12, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT DEAN STRANDY, JR., *Appellant.*

*Albert Armstrong III* and *Mozena & Armstrong,* for appellant (appointed counsel for appeal).

*Ronald C. Wilkinson, Prosecuting Attorney,* and *Mary H. Arden* and *Roger A. Bennett, Deputies,* for respondent.

ALEXANDER, J.—Robert Strandy appeals his convictions, by jury verdict, of robbery in the first degree, and two counts each of felony murder and aggravated murder in the first degree. He assigns error to numerous rulings of the trial court. We affirm.

Strandy was charged in Clark County Superior Court with the robbery and murders of Dennis Devitt and Howard Peterson.[1] At trial, the principal witness against Strandy was Mark Mercer, who aided Strandy in the crime.[2] Devitt and Peterson, according to Mercer, were lured to a secluded area by Strandy. The two victims came to the spot, apparently in anticipation of selling drugs to Strandy and Mercer. However, when they arrived they were bound and gagged by their supposed customers. Strandy then took the victims' buy money and proceeded to shoot them in execution style.

Before trial, the trial court granted the State's request to

---

[1]Strandy was also charged with, and convicted of, conspiracy to commit burglary in the second degree, burglary in the second degree, conspiracy to commit theft in the second degree, theft in the second degree, and conspiracy to commit robbery in the first degree. The burglary and theft charges arose out of Strandy's successful efforts to obtain the gun which was used as the murder weapon.

[2]Mercer pleaded guilty to a charge of second degree murder.

obtain from defense counsel a taped defense interview of Tina Sadewasser, a state witness.

At trial, the State was permitted to introduce four of eight offered photographs of the deceased victims, and a videotape of the crime scene. The videotape, which did not contain a sound track, went to the jury room with the other exhibits at the conclusion of trial. The State also introduced, over defense objection, a Nike athletic shoe that was found at Strandy's residence. The State contended that the shoe had a tread similar in appearance to a tread mark found at the scene of the crime.

Testimony at trial revealed that one of the victims, Peterson, was carrying a paper in his wallet bearing certain numbers. The State was permitted to introduce, again over defense objection, the testimony of an expert witness, Wallis Stefan, that the numbers on the paper were consistent with those commonly made in drug transactions.

During closing argument to the jury, the deputy prosecutor stated the following:

> I'd like for you, ladies and gentlemen, to go back to the jury room and see if each of you can recall exactly what time some other person in your household made a phone call on June 12, 1985. See if each of you can recall every event that occurred on June 12, 1985, in your lives, who you saw, where you went, what time you did everything, like Franney Jardine can. . . . Test your own memories when you are considering what expectations you're going to hold the little people [State's witnesses Tina Sadewasser, Mark Mercer and Jim Bishop] to and their memories of time and events.

Defense counsel did not object to the argument, nor did he move for mistrial.

The trial court instructed the jury as to the elements of all charges in the information. The jury found Strandy guilty of each crime charged. At sentencing, however, the trial court concluded that there had been a merger of some offenses and sentenced Strandy only on count 2 (burglary in the second degree), count 4 (theft in the second degree), and counts 9 and 10 (aggravated murder in the first

degree). All sentences were set to run concurrently. Strandy appeals only his convictions for robbery, felony murder and aggravated murder.

### DISCOVERY OF TAPED INTERVIEW

■ Strandy assigns error to an order of the trial court allowing the State to obtain a tape recording of his counsel's interview of Tina Sadewasser. The defendant correctly points out that pursuant to CrR 4.7(b) a defendant is required to disclose the recorded statements of his own witnesses. He argues that he may not be required to disclose the recorded statement of a state witness. However, the scope of discovery lies within the trial court's discretion, and the trial judge's decisions in that regard will not be disturbed absent a showing of manifest abuse. *State v. Mines*, 35 Wn. App. 932, 938, 671 P.2d 273 (1983), *review denied*, 101 Wn.2d 1010 (1984). The discovery order here does not appear to be such an abuse.

■ Strandy, citing CrR 4.7(f)(1), also asserts that the taped interview is the work product of the defense lawyer and, thus, may not be discovered. We disagree. There is no assertion, nor could there be, that the taped interview contained "opinions, theories or conclusions" of the attorney. That being the case, the tape cannot be deemed to be a work product. *Cf. State v. Garcia*, 45 Wn. App. 132, 137–38, 724 P.2d 412 (1986) (deputy prosecutor's notes taken at an interview held not to be a work product under CrR 4.7(f)(1)).

Even if the trial court did abuse its discretion by ordering discovery of the tape recording, Strandy has not demonstrated any prejudice resulting therefrom. An error in discovery is not deemed to be prejudicial if the court is able to determine that the "average juror would not have found the prosecutor's case significantly less persuasive had the error not occurred." *State v. DeWilde*, 12 Wn. App. 255, 260, 529 P.2d 878 (1974). As far as we can determine from the record available, if the State had not received the tape recording of the defendant's interview of the State's own

witness, the effect on the case would have been negligible.

## PHOTOS AND VIDEOTAPE

Strandy assigns error to the trial court's admission into evidence of the photographs of the victims and a videotape that depicted the deceased victims and the crime scene. Strandy argues that he was prejudiced by this accumulation of visual evidence.

▉ In determining whether photographs should be admitted, the trial court must determine whether the probative value of the evidence outweighs its prejudicial effect. *State v. Crenshaw,* 98 Wn.2d 789, 806, 659 P.2d 488 (1983). The test is identical for videotapes. *State v. Brooks,* 30 Wn. App. 280, 633 P.2d 1345, *review denied,* 96 Wn.2d 1021 (1981). The admission of videotapes and photographs lies within the sound discretion of the trial court. *State v. Brooks, supra.* The trial court's decision to admit such evidence will not be disturbed on appeal absent a showing of a manifest abuse of discretion. *Crenshaw,* 98 Wn.2d at 806.

Strandy asserts that the photos were merely cumulative and only served to prejudice him in that they did not add anything to an autopsy report already in evidence. We disagree. The still photos and the videotape did more than simply demonstrate that the victims were dead. The photos and videotape depicted the manner in which the victims were tied and the location of the wounds on their bodies; thus, they served to corroborate Mercer's testimony about the nature of the killings. While the location of the wounds and the manner in which the victims were trussed could be described in words, a photograph or videotape can help make a witness's description more understandable. A jury should not be denied an opportunity to view exhibits that aid in their understanding of the evidence.

Cases such as the present one are very difficult to try without the jury being confronted with a certain amount of unpleasant evidence. As we have noted, in order to help the jury more easily understand other evidence, modern visual aids can and should be utilized. A trial judge must, how-

ever, be careful to avoid letting the visual aids be used more for their shock value than to educate. Here, the trial judge wisely struck the correct balance between probative value and prejudice. The trial court limited the State to four photographs out of the eight that were offered, and in addition made certain that the videotape did not contain scenes that merely duplicated those contained in the still photos. In our judgment the trial court did not abuse its considerable discretion in admitting the photographs and videotape.

Strandy also argues that the trial court erred in allowing the jury to take the videotape to the jury room where it had an unimpeded opportunity to view the tape. This argument is also without merit.

CrR 6.15(e) provides that the "jury *shall* take with it . . . all exhibits received in evidence . . ." (Italics ours.) However, the decision to allow exhibits to go into the jury room lies within the sound discretion of the trial court. *State v. Frazier*, 99 Wn.2d 180, 189, 661 P.2d 126 (1983). The trial court's decision in this regard will not be reversed on appeal, absent a manifest abuse of discretion. *State v. Ross*, 42 Wn. App. 806, 812, 714 P.2d 703 (1986).

Strandy correctly points out that in *Ross* the trial court was found to have abused its discretion in permitting a "911 tape" to go to the jury room without any control being placed on the number of times the jury would hear the tape. However, the situation here is much different. In *Ross,* the 911 audiotape was a recording of the call of a crime victim, who did not testify at trial, identifying the defendant as the one who had just fired shots at the victim and another person. The court in *Ross* cited *State v. Frazier, supra,* and expressed concern about the danger of the jury overemphasizing the importance of such dramatic evidence to the prejudice of the defendant. Here, that seems unlikely. The videotape of the crime scene, which had no sound track, when viewed in light of all the other evidence in this case, does not appear susceptible of being overemphasized to the degree that it could be considered unduly

prejudicial to the defendant.

## ADMISSION OF SHOES

Strandy contends next that the trial court erred in admitting into evidence the Nike shoe seized at Strandy's residence. He asserts that the nexus between his shoe, which contained a tread similar to that found on a shoe print some 100 feet from the scene of the crime, is so tenuous as to render the exhibit irrelevant.

A trial court has wide discretion in determining the admissibility of physical evidence, and absent a manifest abuse of discretion, an appellate court will not reverse the decision. *State v. Johnson,* 40 Wn. App. 371, 382, 699 P.2d 221 (1985). Viewing the trial court's ruling under that standard, it does not appear that the trial court abused its discretion here. Relevant evidence is defined as evidence having any tendency to make any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. ER 401. It seems clear that if Strandy possessed a shoe containing a tread similar to that depicted in the shoe print found near the scene of the crime, it is more probable that Strandy was also at the scene of the crime. Although the case against Strandy could not stand on that evidence alone, it is, nonetheless, relevant evidence and its admission is well within the trial court's discretion.

## EXPERT TESTIMONY

Strandy also assigns error to the trial court's ruling that police officer Wallis Stefan could testify that numbers found on a paper in victim Peterson's wallet were consistent with those commonly made in narcotics transactions. Strandy bases his argument on the assertion that Stefan was not shown to be an expert witness.

ER 702 provides that expert witnesses may be permitted to testify if technical or specialized knowledge will assist the trier of fact. Whether or not a witness is sufficiently qualified as an expert witness, in order to be able to testify pursuant to this rule, is a decision which lies within

the sound discretion of the trial court and the decision will not be disturbed absent a showing of abuse. *State v. Mak,* 105 Wn.2d 692, 718 P.2d 407, *cert. denied,* 107 S. Ct. 599 (1986).

Stefan's foundation testimony revealed that he was qualified to render his opinion on the subject. Stefan testified that he had been a police officer for over 6 years and that he had been a narcotics investigator for almost one–half of that time. He further indicated that he had received considerable training in narcotics investigation in the form of short courses and meetings. Furthermore, during his police career he had participated in 30 or more drug transactions where he negotiated for the purchase of drugs. He had also executed numerous search warrants where drugs had been seized. Finally, Stefan indicated that what he saw on the writing found in Peterson's wallet was similar to what he had observed in other drug transactions. In our judgment, in light of Stefan's background and experience, the trial court did not abuse its discretion in permitting him to testify.

## ARGUMENT OF PROSECUTOR

■ Strandy argues that certain remarks of the prosecutor in closing argument, which we have set forth in pertinent part above, amounted to prejudicial misconduct warranting a new trial. Because Strandy did not register objection to the argument at the time of trial, he is deemed to have waived his right to assert an objection to the alleged misconduct, unless it can be said that the conduct is so ill–intentioned, flagrant and the prejudice resulting therefrom so marked and enduring that curative measures by the trial court could not neutralize the effect of the conduct. *State v. Charlton,* 90 Wn.2d 657, 585 P.2d 142 (1978).

Judging the remarks of the prosecutor by that standard, we are of the opinion that the conduct did not rise to that level. While the prosecutor should not have invited the jury to conduct memory experiments, it was something that

could have been easily cured by a comment or admonition from the trial court. Strandy has waited too long to raise the issue.

## MERGER

Strandy assigns error to what he claims was the trial court's error in not ordering a merger of the robbery charge into the felony murder charges. Strandy contends, similarly, that the trial court's failure to merge the two felony murder charges with the aggravated murder charges is reversible error. We disagree. Even if the trial court erred in not merging the charges, any harm caused by the trial court's failure to order merger was cured by the trial court's merger of the offenses at the time of sentencing.

Notwithstanding merger of offenses at sentencing, Strandy urges us to reverse and remand for new trial on the theory that the charging of all of the counts inflamed the jury. In *State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979), a similar argument was rejected. The court said that the charging of all offenses is proper and does not overwhelm the jury. In rejecting the request for reversal in *Johnson*, the court indicated that the failure to merge might, indeed, help the defendant because the jury might settle on a lesser crime. *Johnson*, 92 Wn.2d at 680–81. In *Johnson*, the court simply remanded with directions to the trial court to strike the lesser convictions that should have been merged into the greater. *Johnson*, 92 Wn.2d at 682. Because here that was accomplished at sentencing by the trial judge, we need not reverse or remand.

## FAILURE TO INSTRUCT

Finally, Strandy assigns error to the trial court's failure to give a jury instruction that a conviction for robbery could occur only if Strandy was found not guilty of the felony murders and that a conviction for felony murder could occur only if Strandy was found not guilty of aggravated murder. Strandy proposed no such instructions nor did he

raise the issue at trial. Because the issue is not of constitutional magnitude and is raised for the first time here, we will not consider it. RAP 2.5(a)(3).

We affirm.

REED, C.J., and PETRICH, J., concur.

Review denied by Supreme Court January 5, 1988.