[No. 49679-4-I. Division One. March 10, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. ADRIAN MARTELL
DAVIS, *Appellant*.

*Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Julie D. Cook, Deputy,* for respondent.

AGID, J. — Adrian Davis was convicted of felony violation of a no-contact order. He appeals his conviction on three grounds: He argues the trial court (1) deprived him of his right to confrontation by admitting a 911 tape that was unreliable hearsay, (2) failed to give the jury a missing witness instruction when the victim failed to appear for trial, and (3) failed to give a complete to-convict instruction because the felony violation of a no-contact order "assault" element was included in the special verdict form but not in the to-convict instruction. We affirm.

## FACTS

On February 1, 2001, a 911 dispatcher received a hang-up call from Michelle McCottry's residence in Kent. The 911 dispatcher called back and talked to McCottry who was upset and crying. She stated, "He's here jumping on me again." In response to the 911 operator's questions, McCottry said Davis ran out the door after hitting her with his fists, she had a protection order against him that prohibited him from seeing her, and because she was moving, Davis came to pick up some of his things. McCottry was arguing with a visitor when Davis arrived. Davis joined the argument, and McCottry stated that he "jump[ed] up and start[ed] beating [her] up." McCottry identified herself and Davis during the call.

Officers Mark Jones and Steve Tamanaha responded to the scene. When they arrived, McCottry was visibly upset and crying. Officer Jones noticed that the house was in a state of disarray and there was damage to one of the walls. McCottry had fresh injuries on her forearm and face that

were beginning to swell. While she spoke with the officers, she was frantically moving around the house and packing her family's belongings. When Officer Tamanaha photographed McCottry's injuries, she tried to cover her face. The officers later confirmed there was a protection order against Davis and cited him for violating a no-contact order. Davis was convicted of felony violation of a no-contact order and sentenced within the standard range. He filed a timely appeal.

## ANALYSIS

### I. Admission of the 911 Tape

In all criminal prosecutions, a defendant has a right to confront his accusers to ensure the reliability of evidence against him.[1] However, admission of a hearsay statement does not violate an accused's confrontation right if it bears adequate "indicia of reliability."[2] Reliability may be inferred when the statement either (1) falls within a firmly-rooted hearsay exception or (2) contains particularized guarantees of trustworthiness.[3] We review the trial court's decision that a statement is an excited utterance under the abuse of discretion standard.[4]

Davis argues that although the trial court admitted the 911 tape as an excited utterance, it does not properly satisfy confrontation clause concerns because it is unreliable. The State asserts that the 911 tape testimony falls within a firmly rooted hearsay exception and therefore is inherently reliable. We agree with the State because (1) McCottry's statements were properly characterized as excited utterances and (2) excited utterances are firmly rooted

---

[1] U.S. Const. amend. VI; Wash. Const. art I, § 22; *Maryland v. Craig*, 497 U.S. 836, 845, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990).

[2] *State v. Davis*, 141 Wn.2d 798, 10 P.3d 977 (2000).

[3] *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980).

[4] *State v. Strauss*, 119 Wn.2d 401, 417, 832 P.2d 78 (1992).

exceptions to the hearsay rule which meet the reliability test the Supreme Court adopted in *Ohio v. Roberts*.[5]

■ ■ The excited utterance exception assumes that a reaction to the stress of a startling event offers little or no opportunity for a statement that is a misrepresentation or conscious fabrication.[6] A statement is an excited utterance under ER 803(a)(2) if it relates to a startling event or condition and is made while the declarant was under the stress or excitement caused by the event or condition.[7] In this case, when McCottry answered the 911 call-back there was yelling in the background and she sounded frantic as she responded to the operator's questions about what was happening. When McCottry identified Davis and told the operator he was running from the scene in his car, she abruptly dropped the phone, saying she needed to close the door to the house. The police officers who responded to the scene several minutes after the call corroborated her condition by describing her as "crying" and visibly "upset." Because the statements made on the tape were clearly made during and immediately after a startling event and related to that event, they are properly admitted as excited utterances.

■ An excited utterance is a firmly rooted hearsay exception.[8] If a statement falls within a firmly rooted hearsay exception, adequate indicia of reliability are presumed under *Roberts*.[9] When a hearsay statement satisfies the requirements of *Roberts*, further inquiry into whether the statement is trustworthy is not necessary.[10] We accordingly

---

[5] 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980).

[6] *State v. Palomo*, 113 Wn.2d 789, 796-98, 783 P.2d 575 (1989), *cert. denied*, 498 U.S. 826 (1990).

[7] *State v. Jackson*, 113 Wn. App. 762, 54 P.3d 739 (2002).

[8] *Davis*, 141 Wn.2d at 846.

[9] *Id.* at 848 n.281 (citing *State v. Whelchel*, 115 Wn.2d 708, 715, 801 P.2d 948 (1990)).

[10] *Id.* at 847; *see also State v. Smith*, 148 Wn.2d 122, 59 P.3d 74, 79 (2002) (when an out-of-court statement *does not* fall under one of the firmly rooted hearsay exceptions, the confrontation clause requires the proponent of the statement to

reject Davis' argument that this court should examine "circumstantial indicators" that the 911 tape is unreliable under the factors set forth in *State v. Ryan*.[11]

■ Davis claims *State v. Brown*[12] and *Lilly v. Virginia*[13] support his argument that an excited utterance can be unreliable. Neither case is persuasive. In *Brown*, the victim told authorities that she was abducted and raped. At the pretrial hearing, the trial court admitted a 911 tape of her telephone conversation with an operator. At trial, the victim testified that she fabricated the statements she made on the 911 tape. The Washington Supreme Court concluded the trial court abused its discretion by admitting the tape as an excited utterance because it was an actual fabrication. There is no evidence of fabrication in this case. In *Lilly*, the United States Supreme Court held an accomplice's confession obtained in police custody and admitted under the "statement against penal interest" exception to the hearsay rule was unreliable because of the accomplice's natural motive to attempt to exculpate himself.[14] Statements against penal interest are not among the firmly rooted exceptions to the hearsay rule.[15] Nor is McCottry an accomplice or coconspirator, and the record reveals no reason for her to lie.[16]

■ Davis also relies on *State v. Ross*[17] in which this court held that the State violated a defendant's right to confrontation by introducing hearsay statements on a 911 tape

demonstrate that the declarant is unavailable and that the statement bears adequate indicia of reliability under *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984)).

[11] 103 Wn.2d 165, 691 P.2d 197 (1984) (listing nine factors useful in determining whether prior out-of-court statements violate a defendant's right to confrontation).

[12] 127 Wn.2d 749, 903 P.2d 459 (1995).

[13] 527 U.S. 116, 133, 119 S. Ct. 1887, 144 L. Ed. 2d 117 (1999).

[14] *Lilly*, 527 U.S. at 121-22.

[15] *Id.* at 134.

[16] Davis admits that no motive to lie was offered at trial.

[17] 42 Wn. App. 806, 714 P.2d 703 (1986).

when the declarant failed to testify. Although no case has expressly overruled *Ross*, its holding was effectively overruled by the Washington Supreme Court's opinion in *State v. Palomo*.[18] In *Palomo*, the court rejected "the broad proposition that the confrontation clause bars admissibility of hearsay statements unless unavailability of the declarant is shown."[19] The *Palomo* court held that a statement is properly admitted under the excited utterance exception to the hearsay rule regardless of the declarant's availability at trial.

In sum, we conclude that the trial court properly admitted the 911 tape as an excited utterance, and its admission does not offend Davis' right to confrontation because the statements fall within a firmly rooted hearsay exception.

## II. The Missing Witness Instruction

 Davis argues that the trial court erred by failing to give the jury a missing witness instruction when McCottry did not testify at trial. The instruction informs the jury it can infer from the witness' absence at trial that her testimony would have been unfavorable to the party who would logically have called her. The instruction is appropriate when (1) the witness is "peculiarly available" to a party, (2) the witness' testimony relates to an issue of fundamental importance, and (3) circumstances at trial establish that, as a matter of reasonable probability, the party would not fail to call the witness unless her testimony would have been damaging or unfavorable.[20] But no inference is permitted if the witness' absence can be satisfactorily explained.[21] We conclude that the trial court properly refused to give the missing witness instruction because McCottry's absence was satisfactorily explained at trial and the record shows that the State used all available means to locate her.

---

[18] 113 Wn.2d 789, 783 P.2d 575 (1989), *cert. denied*, 498 U.S. 826 (1990).

[19] *Palomo*, 113 Wn.2d at 794.

[20] *State v. Davis*, 73 Wn.2d 271, 276-78, 438 P.2d 185 (1968).

[21] *Id.*

McCottry was unavailable because the State could not locate her, even though it reasonably believed she would appear at trial. The State was in contact with McCottry until the day of trial.[22] During that time, she appeared when asked to appear, met with the prosecutor several times, and promptly returned the prosecutor's and victim advocate's phone calls. McCottry told the prosecutor that she would appear at trial, and the State subpoenaed her. When McCottry unexpectedly failed to appear for a defense interview, the prosecutor tried to locate her to no avail. The following day, the victim's advocate got a phone message from McCottry in which she said that Davis had contacted her and threatened that her children would be taken away and she would look like a liar if she came and testified. The prosecutor explained that McCottry and her children were involved in a house fire two weeks before, there were concerns about housing arrangements, and the State did not know where she was living. This was a fully adequate explanation.[23]

Second, the State used all available means to locate McCottry. When she failed to appear for a defense interview, the prosecutor immediately attempted to contact her personally and through the victim's advocate. Both attempted to contact her by telephone, the State sent a detective to her last known address, and the detective attempted to find her address through a reverse phone directory.[24] Despite this, the State could not locate McCottry.

---

[22] The prosecutor spoke with McCottry by telephone the night before her scheduled appearance.

[23] *See State v. Lopez*, 29 Wn. App. 836, 631 P.2d 420 (1981) (upholding a court's refusal to give a missing witness instruction by concluding that the State satisfactorily explained that the witnesses did not appear after agreeing to testify at trial and the State could not locate them).

[24] Davis argues that the State did not use all available means because it did not obtain a material witness warrant. The State explained to the trial court that because McCottry agreed to testify, it did not obtain one. It did not issue one when McCottry unexpectedly failed to appear because even with the warrant, they had

Because the State provided a satisfactory explanation for the witness' absence and used all available means to contact her, the trial court properly refused a missing witness instruction.

## III. The To-Convict Instruction

 Finally, Davis contends he was deprived of due process because the to-convict jury instruction for felony violation of a domestic violence no-contact order omitted the statutory "assault" element. The State argues that (1) Davis waived his right to appeal under RAP 2.5(a) by failing to object to the instruction below and (2) in any case, the trial court instructed the jury on all of the crime's elements. Failure to instruct the jury on every element of the crime charged is an error of constitutional magnitude that may be raised for the first time on appeal,[25] so we reject the State's first argument. This court reviews a challenged jury instruction de novo.[26] Jury instructions are to be read as a whole, and each one is read in the context of all others given.[27] Instructions are sufficient if they properly inform jurors of the applicable law, are not misleading, and permit each party to argue his or her theory of the case.[28]

At the conclusion of testimony, the trial court instructed the jury on the law. First, the court instructed the jury that

no ability to pick her up without knowing where she was. *See State v. Hobson*, 61 Wn. App. 330, 338, 810 P.2d 70 (noting that "Washington case law is silent on the issue of whether the State must obtain a material witness warrant to hold a witness in custody whenever the State knows such action may be necessary to ensure the witness's presence at trial."), *review denied*, 117 Wn.2d 1029 (1991). In this case, it would have been futile because the State could not have served the warrant.

[25] *State v. DeRyke*, 110 Wn. App. 815, 819, 41 P.3d 1225 (2002) (citing *State v. Aumick*, 126 Wn.2d 422, 429-30, 894 P.2d 1325 (1995)), *review granted*, 148 Wn.2d 1001 (2003).

[26] *Id.* (citing *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996)).

[27] *Id.* (citing *State v. Brown*, 132 Wn.2d 529, 605, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998)).

[28] *Id.* (citing *State v. Mark*, 94 Wn.2d 520, 526, 618 P.2d 73 (1980)).

in order to find Davis guilty of violation of a no-contact order, each of the following elements must be proved beyond a reasonable doubt.

(Instruction 9):

(1) That on or about February 1, 2001 the defendant willfully had contact with Michelle McCottry;

(2) That such contact was prohibited by a no-contact order;

(3) That the defendant knew of the existence of the no-contact order;

(4) That the acts occurred in the County of King.

The court also included an instruction that defined the term "assault" for the jury (instruction 8). And it gave the jury the following instruction on the special verdict form (instruction 12), which read:

> You will also be furnished with a special verdict form. If you find the defendant not guilty of the crime of violation of a no contact order, do not use the special verdict form. If you find the defendant guilty, you will then use the special verdict form and fill in the blanks "yes" or "no" according to the decision you reach. In order to answer the question on the special verdict form "yes," you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you have a reasonable doubt as to the question, you must answer "no."

Finally, the court gave the jury a special verdict form on which it was to indicate whether the State had proved the factor which makes violation of the no-contact order a felony. It read:

> We, the jury, return a special verdict by answering as follows:
>
> Was the conduct that constituted a violation of the no-Contact order an assault?
>
> ANSWER:
> _____
> (Yes or No)

Davis now argues the to-convict instruction for felony violation of a no-contact order was incomplete because the

"assault" element was not included. The State asserts there was no error because the court gave instructions 8 and 12 and the accompanying special verdict form, which fully instructed the jury on the factor that elevates the crime to a felony violation of a domestic violence no-contact order. We agree with the State.

As a general rule, the to-convict instruction need not specify every element of the charged crime in every case.[29] In *State v. Emmanuel*,[30] the State charged the defendant with bribery, and the court gave a detailed to-convict instruction including all but one of the crime's elements. The Washington Supreme Court held this instruction was deficient, reasoning that by undertaking to specifically tell the jury that they could convict the defendant if they found that four elements of the crime had been proved, the judge provided "a yardstick by which the jury were [sic] to measure the evidence in determining appellant's guilt or innocence of the crime charged."[31] The *Emmanuel* court stated that when the instruction purported to include all the elements, the jury was not required to search other instructions to see if another element alleged in the information should have been added.[32] Thus, if the to-convict instruction acts as a yardstick of the law, it must include a complete summation of that law.[33] Where a trial court has not undertaken to provide a yardstick to the jury, the instructions are to be read as a whole and each instruction is to be read in the context of all the others given.[34]

The State relies on *State v. Oster*.[35] There the defendant was also charged with felony violation of a no-contact order. The factor which elevated the crime from

---

[29] *State v. Emmanuel*, 42 Wn.2d 799, 819, 259 P.2d 845 (1953).

[30] 42 Wn.2d 799, 819, 259 P.2d 845 (1953).

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Brown*, 132 Wn.2d at 605.

[35] 147 Wn.2d 141, 52 P.3d 26 (2002).

a misdemeanor to a felony was Oster's prior convictions for the same crime.[36] The Washington Supreme Court had to determine the adequacy of a to-convict instruction that omitted prior convictions as an element of the crime, but were, as here, included in a separate instruction and special verdict form. The *Oster* court concluded it was not an error to instruct the jury separately, and by special verdict form, on prior criminal history because the instructions clearly set forth all the elements of the crime and the jury did not have to search the other instructions for missing elements.[37] The *Oster* decision therefore recognizes a "limited exception to the rule that all of the elements of the crime must appear in the 'to convict' instruction when the element is prior convictions, and a special verdict form is used to instruct the jury to determine their existence beyond a reasonable doubt."[38] Although the missing element in this case involves assault rather than prior convictions, the issue and procedure used in *Oster* are almost identical to this case, and we conclude that its rationale logically applies to the instructions in this case as well.

A charge of violation of a no-contact order asks the jury to determine whether the defendant violated a valid no-contact order. If so, the misdemeanor crime is elevated to a felony when (1) the contact that violated the order amounted to misdemeanor assault, (2) the conduct that violated the order was reckless and created a substantial risk of death or serious physical injury to another person, or (3) the defendant has two or more convictions for the same crime.[39] Unlike most crimes, felony violation of a no-contact

---

[36] Oster was charged under former RCW 10.99.040 and .050 (1996), which provided that a violation of a no-contact order will be punished as a class C felony if (1) the defendant had two or more prior convictions for the same crime, (2) the violator assaulted the person protected by the order, or (3) the violator recklessly created a substantial risk of death or serious injury. The current statute RCW 26.50.110(4)-(5) contains identical factors which elevate the crime to a felony.

[37] *Oster*, 147 Wn.2d at 147.

[38] *Id.* at 148.

[39] RCW 26.50.110(4)-(5).

order is not a separate, distinct crime.[40] Rather, the statute defines a misdemeanor crime and then enumerates the grounds on which the crime is elevated to a felony.

The to-convict instruction here did not purport to contain all of the crime's elements. Rather, the trial court followed the Washington pattern jury instructions[41] and separated felony violation of a no-contact order into two instructions with a special verdict form. Davis argues that the jury should have been given one instruction for felony violation of a no-contact order and a lesser included instruction for misdemeanor violation of a no-contact order. This approach, we conclude, would potentially lead to jury confusion because its construction would be unduly awkward.

When the charge is murder, robbery, assault, and other traditionally defined crimes and the jury fails to unanimously find any one of the elements, it must acquit on the greater crime. With crimes structured like violation of a no-contact order, the failure to find only one specific element requires the jury to acquit on the greater (felony) crime.[42] Constructing a single instruction on the lesser included model under these circumstances has great potential to confuse the jury and result in erroneous verdicts. Indeed, the statutory structure of the latter crimes is more akin to enhancements, like committing a crime while armed with a firearm, that the jury regularly decides by special verdict.[43]

---

[40] For example, the Revised Code of Washington includes four separate statutes for the crime of assault. While the different felony classes of assault are set forth under RCW 9A.36.011-.031, misdemeanor assault is set forth under its own statute, RCW 9A.36.041. The Revised Code of Washington also separates felony theft from misdemeanor theft. While RCW 9A.56.030-.040 sets forth the elements of felony theft, RCW 9A.56.050 sets forth the elements of misdemeanor theft.

[41] 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 36.54-.55 (2d ed. 1998).

[42] Other crimes with same statutory construction are harassment (RCW 9A.46.020), indecent exposure (RCW 9A.88.010), and stalking (RCW 9A.46.110).

[43] Former RCW 9.94A.310(3) (2000) *recodified as* RCW 9.94A.510(3). Drug crime enhancements for proximity to a school, school bus, or park are similar examples. Former RCW 9.94A.310(5) (2000) *recodified as* RCW 9.94A.510(5).

A defendant benefits from having the instructions bifurcated because the special verdict instruction safeguards him or her from being mistakenly convicted of an elevated crime by a confusing and less direct instruction that attempts to coherently combine the special verdict and the to-convict instructions into one.

All the pertinent law need not be incorporated into one instruction.[44] It is only when the jury may have assumed that the to-convict instruction is itself a complete statement of the elements of the crime charges that it must in fact include them. Here the trial court followed the *Washington Pattern Jury Instructions: Criminal*'s (WPIC) bifurcated pattern instructions and placed the special verdict felony instruction after the to-convict for misdemeanor violation of a no-contact order instruction. Because of this, it is clear that the court did not intend to provide a "yardstick" with its to-convict instruction. The instructions were meant to be read as a whole and each one read in the context of all others.

In addition, there is no danger that this approach confused the jury. As in *Oster*, "no searching was necessary" for the jury in this case.[45] "[E]verything the jury was required to decide was clearly laid out for the jury to decide."[46] Instruction 1 told the jury to consider the instructions as a whole and to not place undue emphasis on any particular instruction or part thereof. Instruction 3 informed the jury that each element was at issue and that the burden of proving each element beyond a reasonable doubt rested with the State. Instruction 8 defined the term "assault" for the jury. Instruction 9 provided the elements of violation of a no-contact order. Instruction 12 informed the jury about the special verdict form, instructing them to fill out the form only if they found the defendant guilty of the misdemeanor crime and to answer yes only if they unanimously

---

[44] *Emmanuel*, 42 Wn.2d at 819.

[45] *Oster*, 147 Wn.2d at 147.

[46] *Id.*

agreed beyond a reasonable doubt. Instruction 12 and the special verdict form included the enhancing element of assault. When read together, the to-convict instruction and the special verdict instruction supply all the crime's elements in the manner suggested by the WPIC.[47] This manner of instructing the jury benefits the defendant as well because the jury was required to conclude, not once but twice, that the State met its burden beyond a reasonable doubt.

Accordingly, we conclude there is no constitutional infirmity. We affirm.

COLEMAN and ELLINGTON, JJ., concur.

Review granted at 149 Wn.2d 1032 (2003).

---

[47] While the WPIC's are not binding on the court, they are persuasive authority. *State v. L.J.M.*, 79 Wn. App. 133, 140, 900 P.2d 1119 (1995), *reversed on other grounds*, 129 Wn.2d 386, 918 P.2d 898 (1996).