FILED
COURT OF APPEALS
DIVISION II

2014 FEB 25 AM 9:46

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43203-0-II |
| Respondent, | |
| v. | |
| MARK ALLEN MARKUSSEN, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found Mark Allen Markussen guilty of first degree kidnapping, first degree burglary, second degree assault with intent to commit a felony, and second degree assault by strangulation, all while armed with a deadly weapon. Markussen appeals arguing that (1) the trial court erred in declining to admit the computer-aided dispatch (CAD) log created contemporaneously with a 911 call made after the incident, and (2) he was denied the right to be present when the trial court responded to two questions from the deliberating jury without bringing him back to court. Markussen also argues in a statement of additional grounds (SAG)[1] that his timely trial rights were violated, he received ineffective assistance of counsel, both the prosecutor and the trial court committed misconduct, and errors occurred at sentencing.

---

[1] RAP 10.10.

Because the trial court did not abuse its discretion in declining to admit the CAD log into evidence and any error stemming from the violation of Markussen's right to be present when the trial court declined to further instruct the deliberating jury was harmless, we affirm his convictions. And because Markussen fails to "inform the court of the nature and occurrence of [the] alleged errors" in his SAG, we refrain from addressing these arguments. RAP 10.10(c).

## FACTS

BACKGROUND

On the morning of August 17, 2010, an intruder entered Terrie Cox's house while she was home alone in the kitchen. At first, Cox assumed that the intruder might be a construction worker who accidentally came to the wrong house. He was wearing a black stocking cap, sunglasses, jeans, and a blue "puffy" jacket—which Cox thought strange because it was supposed to be a very warm day. 3B Report of Proceedings (RP) at 454. All of a sudden, the man raised a gun at Cox and asked her if anyone else was home.

Although her husband was at work, Cox told the intruder that he was upstairs hoping that would scare the intruder off. Instead, he started walking toward Cox, yelling at her to turn around. After Cox turned around, the intruder placed the gun against Cox's neck and forced her into her home office. The intruder then turned to look down the hallway and Cox briefly escaped out the front door. The intruder ran Cox down and forced her back inside at gunpoint. Once inside, he again forced Cox into her home office.

Fearing that the intruder "was there to rob me or to rape me," Cox began resisting his attempts to pin her down and "a wrestling match" ensued. 3B RP at 459. Although Cox managed to knock the intruder's gun away, he straddled her on the floor and put her in a choke

hold. He then pulled out a rubber glove from his backpack and began putting it on. Panicking, Cox bit the intruder's hand and "started shredding the glove." 3B RP at 461. Although she was struggling to breathe, Cox managed to ask the intruder why he was trying to kill her. He responded that somebody had his children and wanted Cox dead, and he would not leave until he killed her.

As the intruder spoke, Cox got the distinct impression that she recognized his voice. Something about his voice, the heavy scent of cigarette smoke on him, and his size made Cox think the intruder was a contractor she had hired some years earlier. She pleaded with him to loosen his grip on her and successfully got him "to at least back off" a little bit after telling him that she was hurt. 3B RP at 464. Cox then got off the floor and ran out of the house. This time, she successfully made it to her neighbor's home. Although she was "visibly pretty well shook up," she managed to explain to her neighbor that she had been attacked by a man with a gun. 2 RP at 290. The neighbor called 911.

When the police arrived at Cox's home, the intruder had already fled. Police collected swabs of blood from Cox's hand and leg—Cox herself did not appear to be bleeding. Cox told police that she thought she recognized the intruder's voice and odor as belonging to a former contractor she had hired, but could not remember the contractor's name off the top of her head. A few days later, she found copies of checks she had written to a handyman, Markussen, several years earlier. Cox sent copies of the checks to the police because she was "almost positive" that Markussen was her attacker. 3B RP at 476.

On September 14, Cox had a business appointment with a friend at Tommy O's restaurant. As she walked to the back of the bar, she "started having a panic attack" when she

recognized the strong smell of cigarette smoke on a "guy about the right size" as her attacker sitting at the bar. 3B RP at 481. She asked her friend to speak with the man and try to get his name. The man gave Cox's friend a note with the name "Mark" on it and a cell phone number. 3B RP at 481. Convinced that this was the same man that attacked her a few weeks earlier, Cox dialed 911. In addition, as the man was leaving, she asked the restaurant manager to follow the man out and record his license plate number. Cox sent the information to police and asked them "to please go talk to [Markussen] and get [deoxyribonucleic acid (DNA)]." 3A RP at 485.

Vancouver Police Detective Darren McShea obtained a DNA sample from Markussen on September 17. Testing later revealed that the blood left on Cox's hand after the attack matched the sample provided by Markussen. On November 22, McShea advised Markussen that he was under arrest and should turn himself in. Markussen complied with the request.

PROCEDURE

On November 29, 2010, the State charged Markussen with first degree kidnapping, first degree burglary, second degree assault with intent to commit a felony (first degree burglary), and second degree assault by strangulation. RCW 9A.40.020(1)(b), (c); RCW 9A.52.020(1)(b); RCW 9A.36.021(1)(e), (g). It later amended the information to add deadly weapon enhancements to each charged offense.

Prior to trial commencing, Markussen moved under CrR 8.3(c) to have the weapon enhancements dismissed for insufficient evidence. Markussen argued that the police reports referenced someone in the 911 call saying that the intruder had a fake gun. After pointing out that CrR 8.3(c)(3) explicitly states that a "court shall not dismiss a sentence enhancement or

4

aggravating circumstance unless the underlying charge is [also] subject to dismissal," the trial court denied the motion. 2 RP at 225.

Markussen's jury trial commenced on December 5, 2011. Cox, Cox's neighbor, and various police officers testified as to the events described above. The neighbor specifically testified that Cox never told him that the gun was fake and that she came "running through our gate yelling that she had been attacked by a man with a gun . . . she was visibly pretty well shook up." 2 RP at 290. Cox maintained throughout her testimony that she thought the gun was real and was in fear for her life. The neighbor also testified that Cox spoke to the 911 operator, but Cox could not recall doing so. For unknown reasons, the recording of the 911 call was lost.

Throughout the State's case, Markussen made numerous unsuccessful efforts to get the CAD log that was created by the 911 operator contemporaneous to the 911 call[2] admitted into evidence, either as a business record or an excited utterance.[3] In his final offer of proof, Markussen called 911 Operator Lori Brenner who created the CAD log at issue. Brenner recalled speaking with Cox on the 911 call, but had no independent recollection of whether Cox told her that the intruder had threatened her with a fake gun. Because Brenner could not remember Cox mentioning a fake gun (and Cox herself could not remember even talking to Brenner), the trial court ruled that the statements in the log referring to a fake gun lacked "indicia

---

[2] The 911 operator creates the CAD log contemporaneously with the 911 call to get important information to police officers in real time. Thus, the CAD log is not a verbatim transcription of the call but is a summary of the vital information the operator believes police should know when they respond to the situation.

[3] At trial, Markussen also argued that Cox's alleged statements in the CAD log should be admissible as prior inconsistent statements. The trial court declined to admit the statements on that ground, and Markussen has not challenged that ruling in this appeal.

[of] reliability" and would not allow them into evidence under any exception to the hearsay rule. 5 RP at 830.

On December 8, shortly after the trial court denied Markussen's final effort to have the CAD log admitted into evidence, the State rested. Markussen rested without calling witnesses or presenting any evidence.

While deliberating, the jury sent two notes to the trial court related to exhibits. In response, on both occasions, Markussen's attorney waived Markussen's right to be present, and the trial court instructed the jury (in writing) that it had all the evidence admitted at trial.

The jury found Markussen guilty on all four counts and that he committed each offense while armed with a deadly weapon. Markussen appeals.

## DISCUSSION

### A. CAD LOG

#### 1. BUSINESS RECORD

Markussen argues that the trial court erred in refusing to admit the CAD log as a business record. Because the trial court did not abuse its discretion in ruling that the hearsay statements within the business record should be excluded and *State v. Bradley*, 17 Wn. App. 916, 567 P.2d 650 (1977), *review denied*, 89 Wn.2d 1013 (1978), relied on by Markussen, is not on point, we disagree.

"The trial judge's decision to admit or exclude business records is given great weight and will not be reversed unless there has been a manifest abuse of discretion." *State v. Ziegler*, 114 Wn.2d 533, 538, 789 P.2d 79 (1990). A trial court manifestly abuses its discretion when its

decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *State v. Sanders*, 86 Wn. App. 466, 469, 937 P.2d 193 (1997).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is not admissible unless allowed by court rule or statute. ER 802. Under the "business records" exception to the hearsay rule,

> [a] record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, *in the opinion of the court*, the sources of information, method and time of preparation were such as to justify its admission.

RCW 5.45.020 (emphasis added).

In addition, "[i]n instances of multiple hearsay, each level of hearsay must be independently admissible." *State v. Alvarez-Abrego*, 154 Wn. App. 351, 366, 225 P.3d 396 (2010); ER 805. If the content of the hearsay within the business record is otherwise inadmissible and

> goes to the heart of an issue on trial so that when believed by a jury it could logically be regarded as proof of the affirmative or negative of an issue, the hearsay should be rejected or expunged, even if in doing so the records must necessarily be mutilated or rendered incoherent.

*State v. White*, 72 Wn.2d 524, 530, 433 P.2d 682 (1967).

Here, the CAD log involves hearsay within hearsay—the CAD log itself is hearsay and Cox's alleged statements to Brenner about the fake gun constitute hearsay within hearsay. At trial, Markussen's offer of proof established that the CAD log *could* meet the criteria for a regularly produced business record under RCW 5.45.020, as Brenner testified that she made the

log in the regular course of business contemporaneous to the 911 call. However, Markussen failed to provide for an exception to the hearsay rule that would allow admission of Cox's alleged statements about a fake gun *within* the CAD log.[4] Cox could not remember speaking with Brenner at all, and Brenner could not remember whether Cox told her that the gun was a fake. In addition, Cox and Brown maintained throughout trial that the gun was real. In these circumstances, the trial court did not abuse its discretion in excluding the hearsay within the CAD log as this decision was neither manifestly unreasonable nor based on untenable grounds. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

Markussen argues that this court's 1977 decision in *Bradley* controls. But his argument is misplaced. In that case, Edward Bradley was on trial for fatally shooting a jewelry store owner around 5:30 PM on December 1, 1975. *Bradley*, 17 Wn. App. at 917. At trial, Bradley presented an alibi witness that claimed Bradley had seen and spoken with her "between 5:30 and 6 p.m. on the night of the crime, at a grocery store a considerable distance from the site of the robbery-murder." 17 Wn. App. at 917. The witness purportedly remembered the conversation because "many people had gathered around a police car in the grocery store parking lot and that she heard someone in the store say there had been a purse snatching." 17 Wn. App. at 917-18. In rebuttal, the prosecution presented "a computer printout as a record that was kept of all phone calls requesting police assistance" showing that the only investigation of an alleged purse snatching at a grocery store occurred after 8 PM. 17 Wn. App. at 918. As Division One of this court later noted, the printout was offered to show that "the only police investigation for a purse

---

[4] As Tegland states, "Statements that could not be made by a witness on the witness stand (if, for example, they are irrelevant or contain hearsay statements by others) do not become admissible by virtue of the fact they are included in a business record." 5C WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE, § 803.34, at 90 (5th ed. 2007).

snatching occurred 3 hours after the jewelry store robbery. . . . the statements of the caller were not admitted to prove the truth of the matter asserted." *State v. Ross*, 42 Wn. App. 806, 809, 714 P.2d 703 (1986), *abrogated on other grounds by State v. Davis*, 116 Wn. App. 81, 87-88, 64 P.3d 661 (2003).

Here, Markussen did not seek to include the CAD log merely to establish that a 911 call was made, but instead sought to include statements within the log purportedly made by Cox to contradict a material fact at issue in the case (whether the gun involved was real). Accordingly, *Bradley* is distinguishable. We hold that the trial court did not abuse its discretion in excluding the CAD log from evidence.

2.    EXCITED UTTERANCES

Markussen also argues that the trial court should have admitted Cox's alleged statements concerning the fake gun in the CAD log as an excited utterance. Because Markussen failed to attribute these alleged statements to a particular declarant excited by the event, this argument lacks merit.

Although hearsay is generally inadmissible, ER 803(a)(2) provides that certain excited utterances may be admissible. *State v. Magers*, 164 Wn.2d 174, 187, 189 P.3d 126 (2008). A statement qualifies as an excited utterance if "(1) a startling event occurred, (2) the declarant made the statement while under the stress or excitement of the event, and (3) the statement relates to the event." *Magers*, 164 Wn.2d at 187-88.

Here, Markussen failed to attribute the statement about a fake gun in the CAD log *to any particular declarant*, including Cox. As previously discussed, Cox testified that she did not even recall speaking with 911, and the 911 operator did not remember Cox telling her that the gun was

fake. The trial court did not abuse its discretion in excluding these unattributed statements. *Powell*, 126 Wn.2d at 258.

B. RIGHT TO BE PRESENT

Markussen next argues that the trial court violated his right to be present at all critical stages in his trial by "reinstructing the jury without [his] presence in the courtroom." Suppl. Brief of Appellant at 1. Contrary to Markussen's assertions, the trial court did not "reinstruct" the jury but merely responded, in response to both jury questions, that the jury had all the evidence admitted at trial. Accordingly, even if the trial court erred in failing to recall Markussen for the discussion of how to respond to the jury questions, Markussen fails to establish prejudice and any error is harmless.

A defendant has a constitutional right to be present at all critical stages of the proceedings. *State v. Ratliff*, 121 Wn. App. 642, 646, 90 P.3d 79 (2004). A critical stage is one "where the defendant's presence has a reasonably substantial relationship to the fullness of his or her opportunity to defend against the charge." *State v. Jasper*, 158 Wn. App. 518, 539, 245 P.3d 228 (2010), *aff'd*, 174 Wn.2d 96, 271 P.3d 876 (2012). Generally, conferences between the court and counsel on legal matters are not critical stages except when the issues raised involve disputed facts. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835, 870 P.2d 964, *cert. denied*, 513 U.S. 849 (1994).

A court's error in answering jury questions in the defendant's absence may be harmless if the State can show harmlessness beyond a reasonable doubt. *State v. Caliguri*, 99 Wn.2d 501, 508-09, 664 P.2d 466 (1983); *State v. Allen*, 50 Wn. App. 412, 419, 749 P.2d 702, *review denied*, 110 Wn.2d 1024 (1988). If the court's answer to a jury question is "negative in nature and

conveys no affirmative information," the defendant suffers no prejudice and the error is harmless. *State v. Russell*, 25 Wn. App. 933, 948, 611 P.2d 1320 (1980).

In *State v. Langdon*, 42 Wn. App. 715, 713 P.2d 120, *review denied*, 105 Wn.2d 1013 (1986), for instance, the court instructed the jury on the elements of first and second degree robbery, accomplice liability, and theft. During deliberations, the jury sent a note to the judge reading, "Does 'committing' mean aid in escaping?" *Langdon*, 42 Wn. App. at 717. Without consulting with counsel, the judge responded, "You are bound by those instructions already given to you." *Langdon*, 42 Wn. App. at 717. The defendant argued that this communication violated CrR 6.15(f)(1) and his right to be present at all critical stages of the proceedings. Division One of this court disagreed and found any error was harmless because the communication was neutral and simply referred the jury back to the previous instructions. *Langdon*, 42 Wn. App. at 717-18.

More recently, in *State v. Jasper*, Division One reiterated this sentiment under nearly identical circumstances:

> The trial court erred by not informing the parties of the jury's inquiry. . . But this error was harmless. . . The trial court's response was neutral, did not convey any affirmative information, and did not communicate to the jury any information that was harmful to Jasper. . . Jasper was in no way prejudiced by the trial court's error. The State has satisfied its burden of proving that the trial court's error was harmless.

158 Wn. App. at 543.

Here, the jury sent two questions to the trial court during its deliberations. The first involved a map that the State had used for illustrative purposes at trial but was not admitted into evidence. After recalling counsel for both parties, the trial court—contrary to Markussen's assertions in his briefs—mentioned that if Markussen's attorney wanted him present, he could

send for him. Markussen's attorney did not ask that Markussen be retrieved. The parties agreed that the trial court should send a note repeating (verbatim) part of the court's first jury instruction, stating,

> Exhibits may have been marked by the court clerk and given a number, but they do not go with you to the jury room during your deliberations unless they have been admitted into evidence. The exhibits that have been admitted will be available to you in the jury room.

Clerk's Papers (CP) at 268; *see also* CP at 235 (Instruction No. 1).

Later, the jury sent a second question because it was concerned with the accuracy of information in one of the defense exhibits. As before, the trial court recalled both attorneys and asked Markussen's attorney whether he would like Markussen to be present for the discussion about how to respond. Markussen's attorney declined the invitation. After discussion, all parties agreed that the trial court should respond with a note stating, "You have all of the exhibits admitted at trial[,] you can't have anything more." CP at 269.

In these circumstances, as in *Langdon*, the trial court's communications with the deliberating jury were neutral and simply referred the jury back to the instructions (and exhibits) it had previously received. Thus, even assuming the trial court erred in not including Markussen in this process, that error was harmless as the court's response was neutral and did not convey any affirmative information to the jury. *Russell*, 25 Wn. App. at 948.

C. STATEMENT OF ADDITIONAL GROUNDS

In a SAG, Markussen argues that (1) his timely trial rights were violated, (2) he received ineffective assistance of counsel, (3) the trial court and the prosecutor committed misconduct, (4) certain evidence should have been excluded, and (5) errors occurred at sentencing. Because

No. 43203-0-II

Markussen fails to inform this court of the nature and occurrence of these alleged errors, we refrain from addressing these issues.

Although Markussen is "not required to cite to the record or authority, . . . he must still 'inform the court of the nature and occurrence of alleged errors'" in his SAG. *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012) (quoting RAP 10.10(c)), *review denied*, 176 Wn.2d 1023 (2013). Here, Markussen's SAG consists entirely of references to page numbers in the trial transcripts and brief comments on what is occurring at that point in the proceedings. For example, under a heading entitled "Judge Misconduct (Incompetent)," Markussen's SAG states, "Page 430 (line 18-19) Judge is Confused again." These brief comments fail to inform us of the nature and occurrence of the errors alleged by Markussen. RAP 10.10(c). Accordingly, we refrain from addressing them. *State v. Brown*, 159 Wn. App. 366, 374, 245 P.3d 776, *review denied*, 171 Wn.2d 1025 (2011).

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Penoyar, P.J.

_____
Maxa, J.

13